LOWER MAIN STREET BANK *ET AL.* v. CALEDONIAN INS. CO.

(133 S. E., 553)

1. TRIAL.—If there is any testimony to go to jury on an issue, or if more than one inference can be drawn from testimony, question must go to jury.

2. TRIAL.—On motion for directed verdict, evidence must be considered most favorably to adverse party.

3. INSURANCE—EVIDENCE HELD FOR JURY ON QUESTION WHETHER CAR WAS STOLEN BY EMPLOYEE OF OWNER.—Testimony that person stealing car was employee of corporation controlled by owner of car *held* sufficient to go to jury on question whether car was stolen by employee of the owner within provision of theft insurance policy.

Before WHALEY, J., Richland, December, 1924. Affirmed.

Action by the Lower Main Street Bank and another against the Caledonian Insurance Company. Judgment for plaintiffs, and defendant appeals.

The following is the trial Court's charge on the effect of the warranty contained in the policy sued on:

Of course, the bank stands in the shoes of Mr. Lester, and if the bank could not recover, Mr. Lester could not recover, and vice versa, and also the bank and Mr. Lester cannot come into Court and say that half the policy is good

---

NOTE: Evidence of loss or damage under automobile insurance, see note in 14 A. L. R., 221.

and the other half bad. In other words, they stand or fall on the policy as it stands written with the statements of warranty as well as the exceptions and as well as this porvision providing for theft liability. It is admitted in this case that Mr. Harry Cantey was the agent of the insurance company in writing the policy. There is written in the policy, "Assured's occupation or business is proprietor Rialto and Ideal Theaters." Unless there is meaning other than the meaning that I have taken, and of course, I have taken meaning because it is the accepted meaning, the generally accepted meaning of it is the owner of it. When you say the proprietor of a business, you mean the owner of that business; nothing more or less. If there is something more or less about it, there will have to be something else there to define that difference, and then it becomes a peculiar meaning.

We have a statement that the assured's occupation or business is proprietor of the Rialto and Ideal Theaters. We are dealing with the Ideal Theater. If that insurance policy was issued on the strength of and in consideration of certain warranted statements, said to be warranted and said to be true, and one was that Mr. Lester was the proprietor of the Ideal Theater, and on the strength of that this policy was issued, where do we come then from that? The best way I can get at it is to charge these several things and to let you come to your conclusion.

If the agent of the company wrote that statement in there and at the time knew that the Ideal Theater was a corporation, and if the agent writing it in made the mistake of saying proprietor on the part of Mr. Lester as regards the Ideal Theater, then the plaintiffs would not be bound by that statement, and if the case is otherwise made out plaintiffs would be able to recover.

If the agent knew at the time that he put that in there, even though Mr. Lester left it to him to make statements that Mr. Lester himself ought to have made, and without saying anything to Mr. Lester he went ahead and made out

the policy and put in it whatever was necessary to go in it, and the agent knew at the time when he put down proprietor that Mr. Lester was an officer of the corporation, then the company would be deemed to know what the agent knew, that is, that Lester was not the proprietor, and it meant something else or was put down by mistake, and Mr. Lester would not be bound.

Or if the agent of the company knew that Lester was not the proprietor of the corporation, but was an officer of it operating the Ideal Theater, and yet put in proprietor, and Mr. Lester did not know of such act on the part of the company's agent, you ratified such a statement, thereafter Mr. Lester and the bank would not be bound by that warranty, and if Gore was an employee of the corporation, Lester and the bank would be able to recover.

It is for you to say whether that is true in this case or not.

Here is the other view of the situation, which has a lot of things in it for you gentlemen to decide as to whether this has been proven or not in this case.

If Mr. Lester left it to the company's agent to make out the policy and to include any statements that the policy might call for as having to be made therein as warranties on Mr. Lester's behalf, and on the strength of that a policy was issued, and if the agent put proprietor of the Ideal Theater on the part of Mr. Lester, there being no mistake on the agent's part, and the agent of the company did not know at the time that Mr. Lester was an officer or agent of the corporation known as Ideal Theater, then the company could assume that Lester was the proprietor and could take exactly what was turned into it; that is, that Lester was the proprietor of the Ideal Theater, and issue a policy on the strength of that statement, and it could also assume then necessarily that any one employed at the Ideal Theater would be Mr. Lester's employee and employed by Mr. Lester as proprietor.

If you believe that that was so and later it turned out that the corporation really owned the Ideal Theater, that would

make no difference as far as this contract is concerned.  If those facts are so, if you believe that, then Lester and the bank would be bound by that statement that was made, and Lester and the bank would not be able to recover and would be bound by the warranted statement on which the contract was delivered, and if it turned out thereafter that that statement was false at the time, untrue at the time that it was made, under the supposition that I have given you there, neither of these plaintiffs would be able to recover.  If they warranted that statement to be true and on the strength of that policy was issued and the premium paid, that is their contract and they are bound by it.

*Messrs. Fowles & Bailey,* for appellant, cite: *Purpose of clause in theft insurance policy excepting theft by employee:* 112 A., 586; 14 A. L. R., 215. *Wording of policy to be given ordinary meaning; ambiguities construed against insurer:* 96 S. C., 44; 79 S. E., 717; 14 R. C. L., 925 and 927. *Assured estopped to deny acceptance of terms printed on policy:* 114 La., 146; 3 Ann. Cas., 826. *Parol evidence rule:* 77 S. C., 187; 57 S. E., 766; 46 S. C., 372; 24 S. E., 290. *Stolen goods not in possession of owner:* 114 S. E., 161; 4 Cooley's Briefs on Insurance, 3023. *Condition proved to exist presumed to continue:* 22 C. J., 86.

*Messrs. Moorman & Moorman* and *C. T. Graydon,* for respondent, cite: *Employee of corporation not employee of manager:* 3 K. B., 252; 98 Misc. (N. Y.), 589; 163 N. Y. S., 322; 179 App. Div., 890; 165 N. Y. S., 1079. *Employee defined:* 173 Ill. App., 649. *Case distinguished:* 114 S. E., 161.

June 9, 1926.

The opinion of the Court was delivered by Mr. Justice Blease.

L. T. Lester, Jr., as owner of an automobile, and Lower Main Street Bank, as the holder of a mortgage covering the automobile, as plaintiffs, brought suit against the defendant

on a policy insuring the automobile against theft and fire. The defendant set up the defense that the policy of insurance, involved in the action, contained the provision excepting "theft * * * by any person or persons * * * in the assured's service or employment, whether such theft * * * occurred during the hours of such employment or not," and denied that the property insured was stolen by any one not in the employ of the plaintiff Lester, and further denied that the loss of the property was covered by the policy of insurance. The trial of the cause was in the County Court of Richland County. There was a motion on the part of the defendant for a directed verdict in its favor, on the ground that the evidence was conclusive that an employee of Lester, one of the plaintiffs, stole the property in question, and that the theft by such employee was a risk not assumed by the defendant under the terms of the policy. This motion was refused. The verdict of the jury was in favor of the plaintiffs for the full amount claimed in their complaint. From the verdict and the judgment entered thereupon, the defendant has appealed. The sole ground of appeal is that the County Judge erred in overruling the motion for a directed verdict.

The testimony of the plaintiff Lester, as shown in 1-3 the record which comes to this Court, discloses the fact that at various times he said things and did things tending to establish that the car was stolen by his employee, but in his testimony he also said that Gore was an employee of a corporation by which Lester was also employed. The well-established rule in this State is that if there is any testimony whatever to go to the jury on an issue involved in a cause, or even if more than one inference can be drawn from the testimony, then it is the duty of the Judge to submit the cause to the jury. This is true, even if witnesses for the plaintiff contradict each other, or if a witness himself in his testimony makes conflicting statements. The credibility of witnesses is entirely for the jury. On a motion for a directed verdict, the evidence in the cause

must be considered most favorably to the plaintiff. *Anderson v. Hampton & Branchville Railroad & Lumber Co.* (S. C.), 132 S. E., 47. *Creus v. Sweet,* 125 S. C., 306; 118 S. E., 613; 29 A. L. R., 43. *Richardson v. N. W. Railroad Co.,* 124 S. C., 326; 117 S. E., 510. *State v. Parris,* 89 S. C., 143; 71 S. E., 808.

The exception is overruled, and the judgment of the County Court of Richland County is affirmed.

Messrs. Justices Watts and Stabler concur.

Mr. Justice Cothran and Mr. Acting Associate Justice R. O. Purdy dissent.

Mr. Chief Justice Gary did not participate.

Mr. Justice Cothran (dissenting) : This is an action upon a policy of insurance issued by the defendant to L. T. Lester, Jr., dated April 22, 1924, insuring an automobile in the sum of $1,650 against loss by theft or fire. The plaintiff Lester had mortgaged the automobile to his coplaintiff, the bank, to secure a note due to it, and the insurance policy, without a loss payable clause, was delivered by Lester to the bank; hence its connection with this case.

At the hearing of this appeal, it was admitted in open Court, by counsel for the respective parties, that the automobile was stolen by a man named Gore, from the garage of Lester, driven to Atlanta; and later found upon a bridge, about 12 miles east of Atlanta, destroyed by fire; and that the sole question in the case was whether any other reasonable inference could be drawn from the evidence than that Gore was, at the time of the theft, a servant or employee of the insured, so as to bring the case within the provision of the policy excepting "theft * * * by any person or persons * * * in the assured's service or employment, whether such theft * * * occurred during the hours of such employment or not."

Upon the trial in the County Court, counsel for the plaintiffs made the following admission:

"If Gore was a thief, then the fire provision does not apply, and the theft provision would have to apply, because

the only time the fire provision does not apply is when the theft provision applies"—an admission which was entirely justified under the law and under the provisions of the policy.

The case was tried by his Honor, Judge Whaley, of the Richland County Court, and a jury on December 16, 1924. At the close of the evidence, the defendant moved for a directed verdict upon the ground that the evidence shows that the theft of the automobile was committed by Gore, an employee of the insured, and was within the exception contained in the policy above set forth. The motion was overruled, and the jury returned a verdict in favor of the plaintiffs for the full amount claimed, $1,650, with interest from July 4, 1924, 60 days after the theft. The defendant has appealed upon the single assignment of error, the refusal of its motion to direct a verdict.

The question of the company's liability for the destruction of the automobile by fire having been eliminated, the sole question in the case is whether the trial Judge should have granted the defendant's motion for a directed verdict upon the ground above stated.

It is unquestionably true that Lester actually employed Gore. He claims that he employed him as president and manager of a corporation, the Ideal Theater Corporation, and that consequently Gore was not in his "service or employment"; and that Gore "worked there for the Ideal, also for the Rivoli, a corporation, and also for my wife's theater, the Rialto, and also the Royal, run by a corporation. When I took charge his salary was $60 per week and he got $25 from the Ideal. We divided up his salary among the theaters." It thus appears that Gore was employed by Lester to work at four different theaters, three corporations and Mrs. Lester. As to the Ideal Theater Corporation, Lester states: "I ran and controlled it and could fire and hire anyone there."

It does not appear that Lester made any communication to Gore indicating that Gore was to work for four distinct undisclosed principals of Lester, and under the familiar

principle, in such cases, Lester was personally responsible upon his contract of employment with Gore. Tiffany, Agency, 273. *Davenport v. Riley,* 2 McCord, 198. *Conyers v. Magrath,* 4 McCord, 392. *Long v. McKissick,* 50 ·S. C., 218; 27 S. E., 636. *Jones v. Parker,* 81 S. C., 214; 62 S. E., 261. *Lanham v. Jennings,* 122 S. C., 461; 113 S. E., 791. According then to his own ·statement, he had the right to "hire and fire" Gore; he actually employed him; he did not disclose the principals for whom he claims to have been acting. In addition, he declared, "It could be said that I was a theater owner" ;·he reported to a detective agency shortly after the theft, in his own handwriting, that he was·a "theater owner"; he published an advertisement in the State Newspaper that the theaters "were owned and operated by a citizen of Columbia" (himself) ; referred to them as "Lester's Theaters"; and the policy sued upon contains the statement that he was "proprietor of the Ideal and Rivoli Theaters."

Considering, too, the prospective purpose of making the exception contained in the policy, the Court should not indulge in too strict a construction of the words used. In the case of *Rydstrom v. Ins. Co.,* 137 Md., 349; 112 A., 586; 14 A. L. R., 212, it is said:

"The object and purpose of an exception like the one we are here dealing with in this policy was to guard the company against liability for such thefts as we have in this case, and to prevent fraud and collusion by and between the assured and persons in a household or in the assured's services or employment."

Would the risk to the company from the thefts of Gore be less if Lester employed him for the company owned and controlled by him, with the power to "hire and fire," than if an individual employment had been made?

In the case of *Schmid v. Heath,* 173 Ill. App., 649, cited by counsel for the respondent, it is very clearly intimated that if the employee had been under the contract and direc-

tion of the agent employing him he would have been considered as the employee of such agent.

The charge of his Honor, Judge Whaley, upon the effect of the warranty in the policy is entirely satisfactory to the Court. Let the charge be reported.

While there was error in not directing a verdict for the defendant, it appears that the delinquency is rather a deficiency of evidence than otherwise, and substantial justice will be attained by reversing the judgment and remanding the case for a new trial.

So ordered.

MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concurs.