CARRIE LEWIS SIMPSON v. THE AMERICAN OIL COMPANY AND
BOON-ISELEY DRUG COMPANY.

(Filed 21 May, 1941.)

**1. Appeal and Error § 49a—**

When it is determined on appeal that plaintiff's evidence is sufficient to go to the jury upon the question of defendant's breach of express war-

ranty and damages, the decision becomes the law of the case and defendants' motion to nonsuit upon the issue in the subsequent trial upon substantially the same evidence, is properly refused.

**2. Evidence § 26—Plaintiff may introduce in evidence results of approved medical tests to show that substance was poisonous.**

Plaintiff instituted this action alleging that she was poisoned by an insecticide which she used in accordance with the directions printed on the bottle by defendant manufacturer. The label on the bottle warranted that the insecticide was not poisonous to humans when used as directed. Plaintiff's expert witness, a skin specialist, testified that he performed approved medical tests with the insecticide on plaintiff and others, and was permitted to testify as to the results of the tests. Defendant objected to the testimony on the ground that the conditions under which the tests were made differed greatly from those existing when plaintiff used the insecticide as a spray in accordance with the directions on the bottle. *Held:* The purpose of the testimony was not to show that plaintiff could have been poisoned by the insecticide when used according to directions, but to show that the insecticide was poisonous to humans in violation of the warranty, and was competent for this purpose.

**3. Evidence § 30b—**

Where a photograph is offered in evidence, testimony of witnesses as to its correctness as a true representation of the condition of plaintiff's body at the time in question, made during the preliminary identification and authentication of the photograph, the photograph not being exhibited to the jury at that time, cannot be held violative of the rule that photographs are competent solely for the purpose of illustrating the testimony of witnesses, the use of the photograph in question being so limited by the trial court after it had been admitted in evidence.

**4. Appeal and Error § 39—**

The exclusion of testimony of a witness cannot be held prejudicial when it does not appear from the record what the answer of the witness would have been had he been permitted to testify.

**5. Evidence § 24—**

Plaintiff instituted this action alleging that she was poisoned by an insecticide manufactured by defendant. *Held:* Testimony of defendants' expert witness as to whether he knew of any other person other than plaintiff who was allergic to the insecticide is properly excluded when the extent of witness' experience with other persons who had been in contact with the insecticide is not made to appear, since in the absence of such predicate the testimony has no materiality upon the question of the prevalence or rarity of allergy to the insecticide.

**6. Trial § 48—**

Plaintiff, while testifying as a witness in her own behalf, collapsed on the witness stand. There was nothing to indicate bad faith on the part of the plaintiff or fraudulent imposition on the court. *Held:* Defendants' motion for a mistrial on the ground that the disturbance might have aroused the sympathy of the jury was addressed to the discretion of the trial court.

**7. Election of Remedies § 1—**

    Plaintiff instituted this action alleging that she was poisoned by an insecticide manufactured by defendant. Defendant requested that plaintiff be forced to elect between negligence and breach of warranty, and, subsequently, between breach of implied warranty and breach of express warranty. It appeared that the court, in the formation of the issues and in its charge, eliminated from the case all questions of negligence and implied warranty. *Held:* Defendant could not have been prejudiced by the refusal of his motions that plaintiff be required to elect between the remedies.

STACY, C. J., and WINBORNE, J., dissent.

BARNHILL, J., not sitting.

APPEAL by defendant, The American Oil Company, from *Bone, J.,* at January Civil Term, 1941, of WAKE.

Defendant's appeal is from an adverse verdict and judgment thereupon in a case involving substantially the following features:

The defendant, American Oil Company, manufactures and puts on the market in sealed containers an insecticide under the trade name of "Amox," the ingredients or chemical constituents of which were not revealed at the trial.

On the package the defendant caused to be printed the following:

"For Best Results use *Amox* hand sprayer

How to Use

Amox

The 100% Active Insecticide.

"Amox is made for the purpose of killing insects, it is not poisonous to human beings but is sure death to insects.

"Amox Liquid Spray is non-poisonous to human beings, but is not suited for internal use. Do not spray on food or plants.

"Note with all its insect killing power Amox may be used freely indoors."

Plaintiff purchased such a package from a retailer into whose hands it had come from the defendant by purchase and sale in the regular course of trade. Using it as directed, she sprayed her apartment very thoroughly with the insecticide. It was a hot day, plaintiff was scantily dressed, and some of the spray got upon her person. Itching, burning, and, in time, blisters and boils ensued, covering, as the pathological condition progressed, her face and all of the upper part of her body in patches. She suffered pain, debilitation, nervous breakdown, loss of sleep, and great distress of mind during the progress of the trouble, which lasted for several months, with frequent recurrence in severity. Plaintiff complains of permanent injury.

Dr. Bolus, an expert on skin diseases, who treated her throughout the whole period, stated after diagnoses and tests that her condition was due to poisoning by the "Amox." He further stated that he made a test on five persons—nurses and interns—as well as on Mrs. Simpson, and that the manifestations were the same except in degree—and that "Amox" was poisonous to them all. He gave his opinion, however, as he had upon the former trial, that Mrs. Simpson's condition was due to her allergy or hypersensitivity to "Amox," or to something in its composition, and that a normal person might use it as directed without harmful effect. He described the patch test which he used on the prison group and on Mrs. Simpson as an approved test.

Dr. Carpenter, a witness for defendant, was of the opinion, on tests made by him upon a group of students, that "Amox" was not harmful to human beings.

Answering a hypothetical question addressed to him in behalf of the plaintiff, he gave it as his opinion that if the jury should find from the evidence in the case that "Amox" caused itching, burning, boils, blisters, and sores that existed over a period of months, he would have to say that "Amox" was a poisonous substance.

Defendant noted several exceptions to the admission and exclusion of evidence, which will be referred to in the opinion.

The evidence is very voluminous and, for reasons stated in the opinion, it is not considered necessary to reprint it in full.

The plaintiff brought action for damages, basing it both upon negligence and breach of warranty.

Upon the trial, the defendant in apt time requested the court to compel the plaintiff to elect between negligence and warranty as her ground of recovery and made a similar motion with respect to an election between implied warranty and express warranty, both of which motions were declined, the judge declaring that he would confine the recovery to the breach of warranty as would appear from his charge and the issues submitted.

The following issues were submitted:

"1. Was the plaintiff injured by a breach of warranty made by the defendant with respect to the use of 'Amox' as alleged in the complaint? Answer: 'Yes.'

"2. What amount of damages, if any, is the plaintiff entitled to recover from the defendant? Answer: '$7,000.00.' "

The jury answered both issues against the defendant and judgment was rendered thereupon. Defendant appealed, assigning errors.

*John W. Hinsdale and Douglass & Douglass for plaintiff, appellee.*
*Ruark & Ruark for defendant, American Oil Company, appellant.*

SEAWELL, J. This case was before the Court at the Spring Term, 1940, and is reported as *Simpson v. Oil Co.*, 217 N. C., 542. A new trial was granted because of error in the instructions to the jury involving the possibility of a double recovery on both theories presented in the pleadings—negligence and breach of warranty. The only important difference between that case and the one at bar is that in the second trial the questions of negligence and implied warranty were eliminated altogether and the case went to the jury solely upon the express warranty printed upon the sealed package in which the commodity was purchased.

The question most seriously urged upon us here—that of nonsuit upon the evidence—was decided upon the same state of facts upon the first appeal. The evidence in the trial now under review is substantially the same as that of the former trial—careful comparison fails to disclose any distinction or difference helpful to the defendant.

The Court passed upon the matter in the former appeal adversely to the defendant, and the decision stands as the law of the case. *Harrington v. Rawls,* 136 N. C., 65, 48 S. E., 571; *Johnson v. Ins. Co., ante,* 202; *Fisher v. Fisher,* 218 N. C., 42.

Exceptions were taken to the admission in evidence of tests made by Dr. Bolus—a skin specialist—on a group of five nurses and interns at State's Prison, and on the plaintiff. It is pointed out that these tests were made under conditions differing greatly from those under which the plaintiff came in contact with the spray, with alleged disastrous consequences. But the objection seems to be based on a misunderstanding of the nature and purpose of the test. It was not made to demonstrate experimentally whether Mrs. Simpson could have sustained the serious injury she complains of by coming in contact with Amox in the manner she describes—which seems to have been the purpose of the experiment performed by Dr. Carpenter. The purpose was to ascertain whether Amox had noxious qualities that were poisonous to humans. The test was pronounced by defendant's expert witness to be an approved test. It was also made on plaintiff in a precisely similar manner, and comparisons noted. Of the propriety of the test and its admission in evidence, we have no doubt. Its weight and significance upon the point at issue were matters which might well have been argued to the jury.

A photograph was exhibited in explanation of the testimony regarding the physical condition and appearance of the plaintiff. We cannot see that the rules of evidence were violated or the function of this aid to testimony abused. The incident brought under review goes no further than a preliminary identification of the photograph and testimony as to its correctness as a true representation of the condition of plaintiff's body at the time of the treatment. The record does not show that the photograph was shown to the jury at the time. This preliminary authentica-

tion was necessary to authorize even its limited use. *S. v. Matthews,* 191 N. C., 378, 131 S. E., 743; *Hampton v. R. R.,* 120 N. C., 534, 27 S. E., 96; *Alberti v. New York L. E. & W. R. Co.,* 118 N. Y., 77, 23 N. E., 35. The thin line between the substantive and auxiliary function of photographs in this connection which this Court seems still, on occasion, to regard, was not violated. Later, upon further identification, it was used to illustrate the testimony, the trial judge limiting it to that purpose. *Kelly v. Granite Co.,* 200 N. C., 326, 156 S. E., 517; *Hoyle v. Hickory,* 167 N. C., 619, 83 S. E., 738; *Davis v. R. R.,* 136 N. C., 115, 48 S. E., 591; *Lupton v. Express Co.,* 169 N. C., 671, 86 S. E., 614; *Baker v. Shoe Co.,* 199 N. C., 379, 154 S. E., 667.

Dr. Carpenter, expert witness for defendant, was asked on redirect examination: "Is or is not Mrs. Simpson the only person that you know of that is allergic to Amox, if she is allergic to it?" This was ruled out and defendant excepted. The record does not disclose what the witness would have said, if permitted. But it was also incompetent for another reason: There is no evidence, except that contained in the test made by the witness, as to the extent of the doctor's experience with persons who have been in contact with Amox. We have the numerator but no denominator. It affords no evidence of the degree of prevalence or rarity of the condition of allergy with reference to Amox.

During the trial the plaintiff collapsed while giving her testimony, necessitating an adjournment and recess of the court. The defendant moved for a mistrial, based upon this incident and the possibility that it might have aroused the sympathy of the jury. The request was declined, and the trial proceeded. There was nothing to indicate bad faith on the part of the plaintiff, or fraudulent imposition on the court. The collapse was consistent with what witnesses, and the plaintiff herself, had said about her condition. Granting or refusing the motion, upon the facts presented, was well within the discretion of the trial judge, and we do not find that he abused that discretion. *In re Hinton,* 180 N. C., 206, 104 S. E., 341; *S. v. Tyson,* 133 N. C., 692, 45 S. E., 838; *Gregory v. Perry,* 126 Me., 99, 136 A., 354; *Graves v. Rivers,* 3 Ga. App., 510; *Edwards v. Metropolitan Street Railway Co.,* 143 Miss. App., 371, 127 S. W., 605; *Hudson v. Devlin,* 28 Ga. App., 458, 111 S. E., 693; *Hunt v. Van,* 61 Mont., 395, 202 P., 513.

At the conclusion of the evidence the defendant asked the court to compel the plaintiff to elect between negligence and breach of warranty as ground of recovery; and in a second request demanded an election between express warranty and implied warranty. The judge declined both motions and announced that he would submit the case to the jury only upon the "breach of warranty, as will be shown by the issues and the charge of the Court."

*Simpson v. Oil Co., supra,* did not foreclose the plaintiff from pro-

ceeding either upon the warranty or for the negligence. It was based upon the principle that upon the issues framed the plaintiff might have made a double recovery for the same injury. It is not necessary for us to decide here whether two causes of action—one in negligence and one upon the warranty—are so incompatible as to require an election. It may be that there are circumstances in which it would be more important to ascertain whether a real wrong and injury were inflicted upon the plaintiff than it would be to assign a technical name to the fault in the transaction. But it is certain that the implications of negligence and those of warranty ordinarily are so different that negligence cases dealing with proximate cause are misleading as applied to warranty, and the analogy between the consequences of negligence and the consequences of a breach of contract may not be pushed too far.

It may be inferred from the decision in *Simpson v. Oil Co., supra,* that the matter printed upon the package of Amox constituted an express warranty to the ultimate user that the Amox used, in the manner directed, was harmless to human beings, and of such other conditions as were within reasonable interpretation of the language employed; and that one suffering injury by reason of a breach of such warranty might recover damages. And that the warranty was still effectual, although the product was bought from a middleman. That question, therefore, is no longer open.

The case appears to have been tried with a strict regard to the decision in this case on the former appeal; but in the second trial, from which the present appeal arose, all questions as to negligence or as to implied contract were eliminated from the case—negligence by direct ruling of the judge and the submission of an issue on warranty only, and implied warranty by confining the consideration of the jury to the warranty written upon the package. The defendant is, therefore, unable to gain any advantage by injecting either subject into the discussion. If there had been a danger, which the record does not indicate, that the jury might have taken into consideration an implied warranty, the defendant might have made it the subject of a precautionary prayer for instructions to the jury in that respect. We doubt, however, that under the evidence the court would have been justified in giving any instruction on the point.

The exceptions were ably and forcefully argued, but we do not find in them sufficient cause for disturbing the result of the trial.

We find

No error.

STACY, C. J., and WINBORNE, J., dissent.

BARNHILL, J., not sitting.