379 P.2d 744

Virgie Mae (Virginia) DAVIDSON, Appellant,

v.

Joe WEE, dba Joe's Supermarket and Associated Grocers, Co-op, a corporation, Appellees.

No. 6860.

Supreme Court of Arizona.

En Banc.

March 7, 1963.

**194**

Jose Del Castillo, Tucson, for appellant.

McCarty, Chandler, Tullar & Udall, Tucson, for appellees.

LOCKWOOD, Justice.

This is an appeal by plaintiff Virgie Mae Davidson from a directed verdict in favor of defendant Joe Wee, dba Joe's Supermarket, and Associated Grocers Co-op, a corporation. Taking the evidence in the light most favorable to the plaintiff as we must, Swetnam v. F. W. Woolworth Co., 83 Ariz. 189, 318 P.2d 364 (1957), the facts appear to be as follows:

Plaintiff Davidson purchased from defendant's supermarket a home permanent waving kit known as "Pin-it", on December 27, 1957. The kit consisted of a bottle of lotion, a packet of special bobby pins, roll curlers, end papers and printed directions for its use.

The directions contained a number of cautionary statements against allowing the lotion to remain upon the skin, and that it should be wiped away immediately, and detailed instructions for putting up the hair with the bobby pins and rollers, saturating the curls and timing the period the curls should be allowed to set. Plaintiff testified that she followed all the directions, including shampooing her hair before applying the curling lotion, rinsing her hair with the curls still set, and waiting until her hair was thoroughly dry before removing the pins

When plaintiff took out the pins to comb her hair, it was "like steel wool." She testified that the hair was stiff and hard, and the same night a piece of it fell out. The next day she started on a journey to California, and during the trip she found two more pieces of hair which had fallen. Before the end of the trip her head began to burn and itch. Her hair continued to fall out and approximately three days after application of the lotion one long curl brushed out completely. Her usual employment was cook and hostess for special occasions, and it was necessary for her to wear a wig after her hair fell out, which was uncom-

fortable and aggravated the burning and itching. This condition continued well into the next June. She consulted medical advice, and incurred hospital and medical expenses in connection with the condition described. Plaintiff had been in good health prior to using the "Pin-it". Dr. Baker, whom she consulted about a month following application of the lotion, and who had continued to treat her till the time of trial, testified that plaintiff had an alopecia, (baldness). He stated that after considering her history, the circumstances of the use of the lotion and results of his examinations:

"Well, my diagnosis was that this patient had an alopecia probably, from her history, probably from a chemical; the chemical being in this particular case the permanent."

A Dr. Carl Z. Berry, who had examined plaintiff on behalf of defendant Wee, testified that a patch test with the lotion had negative results; that at the time he examined her it was not possible to determine what caused the loss of hair originally, but that in his opinion the loss of hair was caused by something other than chemicals, and was a form of baldness, described as "alopecia arreata", which was most commonly caused by nervousness. Dr. Baker on cross-examination was asked:

"Q. Doctor Baker, if a person is in normal health, has normal hair, and the product used is normal, nothing wrong with the product, in your opinion could this product cause, assuming these facts, cause a chemical hair cut?

"A. No.

"Q. And if the loss of hair in this case was due to a chemical, isn't it reasonably probable that the reason for the loss of hair would have been some peculiarity of either the person who used it or the hair itself?

"A. My answer to that question would be yes.

"Q. Now, when you first saw the lady your diagnosis was, 'alopecia of the scalp, cause to be determined?'

"A. That is correct.

"Q. In all your practice in this field in dermatology, isn't it fair to state you have never seen an alopecia such as this caused by a cold wave?

"A. That is correct."

He further testified that plaintiff's recovery and regrowth of her hair was impeded in that an examination in April showed that her thyroid activity was low and she had a secondary anemia condition.

Plaintiff's suit against the defendants was based upon an implied warranty that the product she bought from Joe Wee's

supermarket was fit for human use and could safely be used and applied externally without damage to the person; that defendant Wee impliedly warranted that the product was merchantable and fit for the purpose intended (i. e. for a "soft, lovely wave" of the user's hair), and that defendant represented, by the directions on the package that the lotion was self-neutralizing, and that plaintiff relied upon the warranties and representation. She further alleged defendant's negligence in putting the product on sale in violation of public health and safety statutes of the state.

At the end of the plaintiff's case the court directed a verdict for defendants on the grounds (1) there was no proof of negligence, (2) no proof of breach of implied warranty,[1] (3) that notice of breach of warranty was not given, and (4) that the evidence shows plaintiff's damage is not attributable to defendants. As to defendant Associated Grocers Co-op, the court properly directed the verdict, since neither the complaint nor plaintiff's evidence showed any connection between this defendant and the particular article sold to plaintiff.

Apparently the trial court was of the opinion that A.R.S. § 44–215(4)[2] rules out any possibility of warranty in a sale by trade name. This view does not take into consideration the effect of subsection 2 of § 44–215[3] which reads as follows:

"Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

It is well established that the implied warranty of merchantable quality under § 15(2) of the sales act is applicable to the situation wherein an article is requested and sold by brand name. Botti v. Venice Grocery Co., 309 Mass. 450, 35 N.E. 2d 491, 135 A.L.R. 1387, Anno. 135 A.L.R. 1393 (1941); Giant Mfg. Co. v. Yates-American Mach. Co., 111 F.2d 360 (8th Cir., 1940); Ryan v. Progressive Grocery Stores, 255 N.Y. 388, 175 N.E. 105, 74 A.L.R. 339 (1931); Williston on Sales, 3rd Ed., § 236. Merchantability within the meaning of this statute is that the article is reasonably fit for the general uses it was manufactured to serve, whereas warranty of fitness under § 15(4) relates to suitability for the specific purpose of the buyer for which fitness for general purpose may not

---

1. The court stated: "[T]here was no implied warranty on the part of the defendant by virtue of our Statute which is § 44–215(4) on it, which doesn't place the obligation or the burden upon a retailer or seller of goods such as the defendant here to warrant goods which are sold under a trade name."
2. Same as § 15(4) Uniform Sales Act of 1906, Vol. 1 and 1A, Uniform Laws Anno. p. 1.
3. § 15(2), supra.

be sufficient. Giant Mfg. Co. v. Yates-American Mach. Co., supra; Sperry Flour Co. v. De Moss, 141 Or. 440, 18 P.2d 242, 90 A.L.R. 406 (1933). These two warranties are not mutually exclusive. A warranty of fitness and a warranty of merchantability may each arise upon the same situation where the purpose for which the product is purchased is the same as the purpose for which it is generally sold. The warranties may co-exist and recovery may be founded on either. D'Onofrio v. First National Stores, 68 R.I. 144, 26 A.2d 758 (1942); Giant Mfg. Co. v. Yates-American Mach. Co., supra; Ryan v. Progressive Grocery Stores, supra. The following statement quoted in the D'Onofrio case encompasses the reasoning upon which the foregoing principles are based.

" * * * 'Merchantability means that the article sold [should] be of the general kind described and reasonably fit for the general purpose for which it shall have been sold. The buyer's particular purpose may be equivalent to nothing more than his general purpose, or it may relate to his more specific purpose. * * * Under the Sales Act a dealer who sells articles which ordinarily are used in but one way impliedly warrants fitness for use in that particular way, unless there is evidence to the contrary. This is only a warranty of merchantability.' " 26 A.2d 760.

In Brennan v. Shepherd Park Pharmacy, D.C.Mun.App., 138 A.2d 494 (D.C. 1957), it was held that the sale of the hair dye by brand name carried with it a warranty that it was fit for the purpose of dying hair and allegations that after the application of the dye plaintiff suffered abscesses and loss of hair raised an inference that the "unwholesome" condition of the dye caused the injury and constituted breach of the warranty even though the user had previously used the same product without ill effects. In this case, the general purpose for which the wave lotion was sold and the particular purpose for which it was used by plaintiff Davidson were the same, that is, to place "an attractive permanent wave" in the hair of the user. An implied warranty that it would do so in accordance with its directions arose upon the sale.

The question is thus presented whether there was any evidence that there was a breach of such a warranty. If the evidence is sufficient to support a finding that the application of the waving lotion caused the injury to the plaintiff's hair, the product necessarily was not merchantable for the general purpose for which it was sold.

The trial court held that plaintiff's injury could not have been caused by the waving lotion, and stated his basis for such conclusion:

"The only competent testimony as to what might have caused the injuries—no doubt she did suffer injuries—was the testimony of Dr. Baker, who said he had a belief that it could have been caused by the chemicals. But if you recall, when he came on the stand this morning his testimony on cross examination was, that if the person, Mrs. Davidson in this case, was in good health, her scalp was in good health, and the hair was in healthy condition, and the lotion applied properly, this thing could not have happened. So in effect, she, and previously to that Mrs. Davidson had testified to all of these things, that she was in good health, her hair was in good health, and that she applied it properly, so in effect, it couldn't have happened if those things were true." [4]

Dr. Baker's testimony on direct and cross-examination might be taken as inconsistent. However, inconsistency in a witness's testimony is within the province of the jury to reconcile. Food Jobbers, Inc. v. Ellis, 75 Ariz. 49, 251 P.2d 651 (1952); 88 C.J.S. Trial § 214a.

 The motion for directed verdict admitted the truth of plaintiff's evidence including all reasonable inferences favorable to her. Pena v. Stewart, 78 Ariz. 272, 278 P.2d 892 (1955). This rule applies where there is a conflict within the evidence presented by the party against whom the directed verdict is sought. In such cases the unfavorable portion of the evidence must be disregarded and only that portion which is favorable may be considered. Harris v. Saunders, 108 Wash. 195, 182 P. 949 (1913); Lower Main Street Bank v. Caledonian Ins. Co., 135 S.C. 155, 133 S.E. 553 (1926); 88 C.J.S. Trial § 257.

 Further, the jury is not compelled to believe the opinion of the experts in the face of evidence of practical results indicating otherwise. Pacific Guano Co. v. Ellis, 83 Ariz. 12, 315 P.2d 866 (1957). Therefore if there is a conflict within the medical testimony or assuming the medical testimony is all unfavorable, if there is independent evidence from which the jury could draw a reasonable inference that application of the waving lotion caused the plaintiff's injury then the matter must be left for the consideration of the jury. The events related by plaintiff cannot be said as a matter of law to require a conclusion that the loss of hair did not result from the use of the home permanent waving kit. Brennan v. Shepherd Park Pharmacy, supra.

Defendants as a further ground to support a directed verdict in their favor contend that plaintiff cannot recover because

4. The question of what effect there might be on an implied warranty of merchantability if the person using the waving lo-

tion was not in good health was not in issue.

the complaint does not contain an allegation that notice of the alleged breach of warranty was given prior to the filing of the action. The trial court did not rule on this ground. The contention is founded on the provisions of A.R.S. § 44–249 (Uniform Sales Act, § 49).

"In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

It is well established that the giving of such notice within a reasonable time after the buyer knows or should have known of the breach is a prerequisite to the right of recovery. 46 Am.Jur. Sales § 257; Anno. 53 A.L.R.2d 274, 283; Anno. 71 A.L.R. 1149. The purpose is to protect the seller against belated claims for damages under circumstances whereby the seller may be prevented from making proper investigation and to afford him an adequate opportunity to govern his conduct accordingly. Whitfield v. Jessup, 31 Cal.2d 826, 193 P.2d 1 (1948); Williston on Contracts, Rev.Ed., § 714.

The rule generally stated is that notice is a condition precedent to recovery and must be pleaded and proved. Anno. 71 A.L.R. 1150. From this defendants argue that the notice must be given prior to bringing suit because until the notice there is no cause of action. The complaint herein does not allege the giving of a notice nor is there anything in the evidence presented to indicate whether such a notice was given prior to the commencement of the action. The cases stating the rule are concerned with the timeliness and sufficiency of notice to assure that the seller was informed of the nature of the claim against him as required by the statute "within a reasonable time."

However, if the complaint itself meets these requirements there is no need to give an additional parallel notice. Silverstein v. R. H. Macy & Co., 266 App.Div. 5, 40 N.Y.S.2d 916 (1943). Notice of the claim of breach need take no special form. Where no particular mode of notice is required by the statute what constitutes giving of notice is liberally construed. Yuma County v. Arizona Edison Co., 65 Ariz. 332, 180 P.2d 868 (1947). The complaint was filed February 10, 1958, within two months of the time of purchase, and presumably was served soon thereafter. The answer was filed March 3, 1958. This was not a

commercial transaction between persons engaged in business. The gist of the action is not related only to a defective article which may be inspected but is concerned with the ill effects claimed to have resulted from latent qualities of the article. The full effects of the injury were not felt until several days after the application of the lotion. Plaintiff sought medical and legal advice and acted promptly thereafter. It does not appear defendants were in any way prejudiced by the time in which they were notified as plaintiff's condition continued several months after the time of filing of the answer. The waving lotion itself was available for their inspection and analysis.[5] Under these circumstances the court cannot say that the time in which notice was received is unreasonable as a matter of law. Whether notice is reasonable is a matter to be resolved by the jury unless it appears that only one finding can legally be derived from the circumstances. In the instant case a trier of fact could reach a conclusion that plaintiff gave to defendants the sufficient notice within the statute.

The matter is remanded for new trial as to defendant Joe Wee in accordance with this opinion.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and JENNINGS, JJ., concurring.

5. The bottle containing some remnants of the lotion was admitted in evidence.