424 P.2d 835

**Virgie Mae DAVIDSON, Appellant,**

**v.**

**Joe WEE, dba Joe's Super Market, Appellee.**

**No. 2 CA–CIV 127.**

Court of Appeals of Arizona.

March 8, 1967.

Rehearing Denied April 13, 1967.

Review Denied May 16, 1967.

Jose Del Castillo, Tucson, for appellant.

Chandler, Tullar, Udall & Richmond, by Robert S. Tullar, Tucson, for appellee.

MOLLOY, Judge.

This is an appeal from a judgment rendered for the defendant after a trial to a jury in a personal injury action in which the plaintiff contends that she was rendered temporarily bald by the use of "Pin-It Waving Lotion," a permanent-waving solution purchased from the defendant's grocery store. There has been a previous appeal in the case, which resulted in a reversal of a judgment directed for the defendant, our Supreme Court holding that there was sufficient evidence of a breach of an implied warranty of merchantability to go to a jury. Davidson v. Wee, 93 Ariz. 191, 379 P.2d 744 (1963).

On retrial, both theories of implied warranty of merchantability and negligence were pressed by the plaintiff, but only the theory of implied warranty was permitted to go to the jury by the trial court. On appeal, the only question raised is whether it was proper to admit certain evidence offered by the defendant. Over plaintiff's objection, a Mr. Votaw, director of product research for Procter & Gamble Company, the manufacturer of the product in question, testified as to certain research conducted before releasing this product on the market and as to the manufacturing methods used in its production. It is the plaintiff's contention that such testimony was totally irrelevant to the issues tried in the lower court and that its admission was prejudicial to the plaintiff's cause to the jury.

The case on appeal is presented by way of a stipulated résumé of the testimony of most of the witnesses, with the transcript being supplied only as to the testimony of the defendant and of the director of product research of Procter & Gamble.

From the résumé of the testimony, viewed in the light most favorable to supporting the verdict below, Safeway Stores, Incorporated v. Cone, 2 Ariz.App. 151, 406 P.2d 869 (1965), Snyder v. Beers, 1 Ariz.App. 497, 405 P.2d 288 (1965), the following facts may be gleaned.

The waving lotion in question was purchased in its original package and container, unopened, with the waving lotion being contained in a glass bottle with a metal cap, sealed in such manner that upon unscrewing the cap, a metal seal was broken by the user. After using the permanent wave solution in question, most of the plaintiff's hair left her head, leaving her almost completely bald for some period of time. The medical testimony was in dispute as to whether the permanent wave solution in question caused this baldness or whether it was caused by alopecia areata, a pathology of the human scalp unrelated to chemical origin. The medical testimony was undisputed that if the permanent wave solution had been used as directed in the literature accompanying it, it would not have caused the plaintiff's loss of hair.

The pretrial order indicated that as to both the count based on negligence and that based on implied warranty, " * * * there is the question of causation and the question of damages." This nebulous order is made more certain by reading portions of the warranty count in plaintiff's complaint:

" * * * said waving lotion was not suitable and reasonably fit to be used for the purpose for which purchased by plaintiff, in that because of the noxious ingredients or error in compounding of the chemical concoction contained therein in said container and package, and because of the handling of said 'PIN-IT' WAVING LOTION and because of the nature and propensities of the said waving lotion chemicals, it was not safe for human consumption or it was dangerous and harmful for use on the human body and it was not fit for the use for which

said lotion was sold, or which goods of that description were sold."

Complaint is made that Mr. Votaw was permitted to testify as to various tests performed in determining the safety of the "Pin-It" product before placing it upon the market. These tests, conducted both upon animals and human beings, were to determine the toxicity of the solution when placed upon exterior portions of the body and when ingested, and to determine whether allergic responses would be elicited by the product when used as directed. Additionally, Mr. Votaw was permitted to testify as to the care followed in the mixing of the solution and the bottling thereof to control the proportions of the ingredients and the purity of the product. The objection expressed to this line of testimony was that it was irrelevant because it was not directed specifically at the solution in the particular bottle purchased by the plaintiff.

■ Under the pretrial order, as clarified by the complaint, it is apparent that one of the possible grounds of liability was that the standard product sold as "Pin-It" was not " * * * reasonably fit for the general uses it was manufactured to serve * * * "[1] This being so, we hold that the line of testimony objected to was relevant and properly admitted. Hardman v. Helene Curtis Industries, Inc., 48 Ill.App.2d 42, 198 N.E.2d 681 (1964); Barefield v. LaSalle Coca-Cola Bottling Co., 370 Mich. 1, 120 N.W.2d 786 (1963); Simpson v. American Oil Co., 219 N.C. 595, 14 S.E. 2d 638 (1941).

■ However, even if there were required a showing that the contents of the bottle purchased by the plaintiff contained the standard product, we find sufficient evidence for the trial court, in its discretion, Welker v. Kennecott Copper Company, 1 Ariz.App. 395, 407, 403 P.2d 330

(1965), Throop v. F. E. Young and Company, 94 Ariz. 146, 155, 382 P.2d 560 (1963), to have found a sufficient foundation in this regard. Among such evidence is the following: (1) Mr. Votaw testified that the small remaining portion of the solution in the bottle purchased by the plaintiff appeared to be the Pin-It solution produced by Procter & Gamble, that it was not possible for one bottle of a batch of solution to have different ingredients than any other bottle in the same batch, that Pin-It was produced in batches of "roughly fifteen thousand" bottles at a time and that great care (which he described in some detail) was taken to mix all batches of "Pin-It" with the same ingredients and in the same proportions. (2) Chemical analysis of a small remaining portion of the lotion in the bottle purchased by the plaintiff from the defendant is consistent with the conclusion that this particular bottle of lotion contained the same ingredients as all other bottles of "Pin-It" lotion. (3) The bottle in question was capped in such a way that it could not be opened without breaking the cap.

■ We agree with the trial judge that the defendant was somewhat out in "left field" in presenting testimony that a " * * * small child would have to consume more than two full bottles to be in any jeopardy." However, in this instance, we do not believe that this one piece of evidence pertaining to lack of toxicity upon ingestion is so far beyond the bounds of relevancy as to merit reversal. See Southern Pacific Company v. Barnes, 3 Ariz. App. 483, 415 P.2d 579 (1966); Yoo Thun Lim v. Crespin, 100 Ariz. 80, 411 P.2d 809 (1966).

Judgment affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.

1. Quote from Davidson v. Wee, 93 Ariz. 191, 196, 379 P.2d 744, 747 (1963).