585 P.2d 1240

**Jack M. RAYNER and Fay Rayner, his wife, and Jack M. Rayner, Jr., Appellants,**

v.

**STAUFFER CHEMICAL COMPANY, and Chemical Distributors d/b/a Arizona Agrochemical Company, Appellees.**

No. 1 CA–CIV 3588.

Court of Appeals of Arizona, Division 1, Department C.

June 22, 1978.

Rehearing Denied Aug. 15, 1978.

Review Denied Sept. 19, 1978.

Fennemore, Craig, von Ammon & Udall by Calvin H. Udall, Frederick G. Gamble, Phoenix, for appellants.

Evans, Kitchel & Jenckes, P.C. by Newman R. Porter, Amy R. Coy, Phoenix, for appellee Stauffer Chemical Co.

Gust, Rosenfeld, Divelbess & Henderson by James M. Koontz, Phoenix, for appellee Chemical Distributors.

## OPINION

SCHROEDER, Presiding Judge.

Appellants, Jack M. Rayner and his wife and son, ranchers, brought this action to recover damages for the destruction of

their 1972 and 1973 potato crops. Their complaint, sounding in negligence, strict liability in tort, and breach of an express warranty, alleged that the damages had been caused by Eptam, a herbicide manufactured by appellee, Stauffer Chemical Company, and sold by appellee Chemical Distributors.[1] Appellants' case was tried before a jury which returned a verdict in favor of the appellees on all three theories of liability.

On appeal, appellants recognize that the jury, in finding for the appellees on all counts, must have found that Eptam had not caused the damage to appellants' potatoes. Appellants, however, assert that the jury's verdict in favor of the appellees was based on inadmissible evidence. They contend that the trial court erred in admitting both the testimony of the appellees' expert witnesses and the results of tests conducted or supervised by these witnesses which showed that Eptam had never injured potato tubers. Before addressing directly the legal issues, we review in some detail the nature of the evidence presented by the parties.

Appellants' ranch is located near Litchfield Park, Arizona. In March, 1972, Jack Rayner planted potatoes on 60 acres of land. Before planting the potatoes, Rayner gave the land a deep, pre-plant irrigation and in order to control soil insects, treated the land with Telone, an insecticide manufactured by Dow Chemical Company. Rayner also planted an additional eleven rows on land which had not received the pre-plant irrigation or the Telone treatment. Before the potato plants emerged from the soil, Rayner applied Eptam to the entire potato crop. Shortly thereafter, he thoroughly irrigated the eleven rows because they had not received the heavy, pre-plant irrigation. During the trial, appellants presented evidence showing that the heavy irrigation given to these eleven rows after they had already been treated with Eptam

may have caused the Eptam to leach or drain below the root zones of the potato plants and weeds.

As the potato plants began to grow above ground and to produce potato tubers underground, Rayner noted that except for the plants in the eleven rows, the potato plants began to develop in an abnormal fashion. Rayner testified that the plant leaves appeared small, stiff, upright, and yellow and that the underground tubers, although appearing normal on the outside, were brown and "corky-looking" on the inside.

These symptoms were also observed by Thomas Clemens, an employee of Stauffer Chemical Company. Clemens testified that the plants growing in the 60 acres appeared to be wilted and yellow, but that the plants in the eleven rows seemed to be in a much better condition. In fact, Clemens observed the presence of weeds in the eleven rows which should have been killed by Eptam.

At Rayner's request, Ivan D. Shields, Ph.D., a Maricopa County Agricultural Agent and a specialist in plant pathology, also visited the ranch and examined the potato crop. Dr. Shields testified that the potato plants were stunted in growth and were various shades of green. Many of the potato tubers had dry corky spots, which he termed lesions. Although he could not determine the cause of the lesions, he concluded from the pattern of these injuries that they had been caused by a man-made substance as distinguished from a plant disease or virus. As a result of his observations, he advised Rayner to attempt to isolate the chemicals he had used on his crop in his next year's potato planting.

In early 1973, Rayner again prepared several acres on his farm for the planting of potatoes. At this time, he believed that Telone had caused the lesions which had damaged his 1972 potato crop.[2] He applied

---

1. Before trial, Chemical Distributors was awarded summary judgment against Stauffer for indemnification in the event of a judgment for the appellants. Chemical Distributors,

therefore, did not actively participate in the trial or in this appeal.

2. In September, 1972, appellants filed suit against Dow Chemical Company, the manufac-

Telone and Eptam to approximately 55 acres of land. Eptam alone was applied to approximately five acres, and neither Eptam nor Telone was applied to the remaining acreage. Rayner also applied Telone, mixed with several possible contaminants, to several rows of potatoes.

Shortly after the potato plants began to emerge from the soil, Rayner again saw the same symptoms which he had observed in 1972. However, Rayner testified that these symptoms were located only in the fields which had been treated with Eptam. These symptoms were also observed by Gene Franzois, an agricultural consultant specializing in irrigation who had established Rayner's irrigation schedule in 1973. Franzois testified that he had observed damaged plants and potatoes with lesions on them in the areas which had been treated with Eptam. He also stated, however, that he had found damaged potatoes in the untreated areas as well. Rayner again requested Dr. Shields to visit his ranch.

Dr. Shields testified that in the fields which had been treated with Eptam, he found the same above ground and below ground symptoms which he had observed in 1972. He stated that these symptoms were not evident in the fields which had not been treated with Eptam. As in 1972, he was unable to discover any potato diseases which could have caused these injuries. On the basis of his experience as a plant pathologist and as a result of the observations he made on the appellants' ranch in 1972 and 1973, he stated that Eptam had to have been the agent which caused the injuries which destroyed the potato crops in both years.

Appellants contended at trial that they had isolated Eptam as the only possible cause of the tuber lesions which ultimately destroyed their potatoes. Appellants emphasized that in 1972 no lesions had appeared in the potatoes growing in the eleven rows which had been treated with Ep-

tam and which had been, they asserted, leached below the root zones of the potato plants, and that in 1973 no lesions had appeared on the potatoes growing in the areas which had not been treated with Eptam.

The appellees, on the other hand, introduced evidence to show that Eptam could not have caused the lesions which appeared on the appellants' potatoes. Appellees called several expert witnesses who described experiments in which Eptam was used in various plants, including potatoes. None of these experts were able to cite a single instance in which Eptam had injured potato tubers. When applied to potato plants at greater than recommended levels, Eptam had caused a darkening and curling of the leaves, but had not damaged the potatoes' tubers. Stauffer's manager of research and development, Albert Benson, Ph.D., testified that on the basis of approximately 200 tests, Eptam had been proven to be safe and effective for use with potatoes.

Appellees' evidence also showed that when Eptam injured plants, it did so in a consistent and uniform manner: it did not injure the underground portions of the plants, but caused the above ground portions to become dark green in color with the leaves becoming malformed and "cupped" in appearance. These symptoms contrasted sharply with the appearance of the Rayner plants, which were described as being yellow or light green in color, with stiff, stunted leaves and tubular lesions.

Appellees' expert witnesses included two men with extensive experience in growing potatoes in California and Arizona. Harold Kempen, a specialist in weed control and a farm advisor in Kern County, California, testified that he had conducted several tests using Eptam on potatoes grown in Kern County. He testified that he had never seen Eptam damage potato tubers or reduce the yield of potatoes to any significant degree. He also stated that in tests conduct-

turer of Telone. Since the potatoes in the eleven rows which had not been treated with Telone, but which had only been treated with Eptam had grown normally, appellants thought that Telone, which had been applied to the

potatoes in the 60 acres, had caused the lesions. After the 1973 planting, appellants believed Eptam was responsible for the crop failures, and amended their complaint to allege liability against the present appellees.

ed with the cooperation of farmers in Kern County, Eptam had never damaged potatoes. W. D. Pew, Ph.D., a vegetable research specialist and superintendent of the University of Arizona's experimental farm, testified that he had tested Eptam on potatoes grown in Arizona's Salt River Valley for eight years. He stated that there had never been an instance in which Eptam had injured potatoes during his years of testing and that he believed Eptam was safe for use on potatoes.

Appellants first argue that admission of appellees' evidence of prior experience with Eptam was contrary to the general rule, originally enunciated in *Fox Tucson Theatres Corp. v. Lindsay,* 47 Ariz. 388, 56 P.2d 183 (1936), that testimony of a lack of prior accidents or incidences of injury is inadmissible in a negligence action. In *Fox Tucson,* the plaintiff alleged that her injuries had been caused by the defendant's failure to furnish adequate lighting in a dark stairwell. The Court stated that the trial court had not erred in disallowing an employee of the defendant to testify that he had never known of any other accidents in the stairwell which had been caused by defective lighting. The Court's holding in *Fox Tucson* has been applied in other cases in which there has been an allegation that the defendant negligently failed to maintain specific premises. Thus, evidence offered to show the non-occurrence of similar accidents at a particular place has been excluded. *E. g., Hlavaty v. Song,* 107 Ariz. 606, 491 P.2d 460 (1971); *St. Gregory's Church v. O'Connor,* 13 Ariz.App. 421, 477 P.2d 540 (1970).[3]

▮ In this case, however, the evidence challenged by the appellants was introduced not to show the absence of mishaps but to show the behavior and effect of Eptam when used on potatoes.[4] Appellees' evidence demonstrated the various qualities and characteristics of Eptam when used as a herbicide. When a party alleges that a particular product has caused an injury, evidence concerning that product's behavior is commonly admitted. *Pacific Northwest Bell Telephone Co. v. Century Home Components, Inc.,* 261 Or. 333, 491 P.2d 1023 (1971), *modified on other grounds,* 261 Or. 333, 494 P.2d 884 (1972); *Simpson v. American Oil Co.,* 219 N.C. 595, 14 S.E.2d 638 (1941); *Guinan v. Famous Players-Lasky Corp.,* 267 Mass. 501, 167 N.E. 235 (1929); *see Davidson v. Wee,* 5 Ariz.App. 187, 424 P.2d 835 (1967); *Hardman v. Helene Curtis Industries, Inc.,* 48 Ill.App.2d 42, 198 N.E.2d 681 (1964).

▮ Appellants further contend that the trial court erred in admitting evidence of tests conducted on Eptam by the appellees' witnesses because there was no showing that the tests were performed under conditions similar to those existing at the Rayner ranch in 1972 and 1973. Appellants emphasize that their potatoes were grown in a sandy, alkaline soil, having a high salt content. Appellees' evidence, however, was introduced to demonstrate and verify several specific characteristics of Eptam. Experiments designed to show the general traits of products may be admitted into evidence even though conditions surrounding the experiments varied from conditions surrounding the situation being litigated. *Nanda v. Ford Motor Co.,* 509 F.2d 213 (7th Cir. 1974); *Pacific Northwest Bell Telephone Co. v. Century Home Components, Inc.,* 261

---

**3.** The current validity of this rule is questionable. Our Supreme Court has indicated in a products liability case that evidence showing that a manufacturer had not received notice of any injuries allegedly caused by its product might well be admissible in a negligence action. The Court stated that such evidence is

"of course, material to an action bottomed on negligence, but immaterial to an action based upon strict liability. It should however be noted that even in a negligence case, the lack of notice of injuries (1) does not establish the fact that no injuries had occurred, and (2) a long history of good fortune does not exclude a conclusion that ordinary prudence requires a warning." *Tucson Industries Inc. v. Schwartz,* 108 Ariz. 464, 468, 501 P.2d 936, 940 (1972).

**4.** In this regard, it is important to note that the trial court excluded evidence intended to show only a lack of complaints regarding the use of Eptam on potatoes. This evidence was properly excluded because it failed to show or demonstrate the behavioral characteristics of Eptam.

Or. 333, 491 P.2d 1023 (1971), *modified on other grounds*, 261 Or. 333, 494 P.2d 884 (1972); *Council v. Duprel*, 250 Miss. 269, 165 So.2d 134 (1964); *see generally* McCormick, Handbook of the Law of Evidence § 202 (Cleary ed. 1972):

> "[E]xperiments designed to show the general traits and capacities of materials involved in the controversy are often admitted in evidence without confining the experiments to the conditions surrounding the litigated situation.    .   .   . Further, where proponent makes no claim to have reenacted or simulated the whole or substantial part of the original happening, recent decisions have distinguished these limited-purpose experiments, and have adapted the similarity requirement accordingly. The question, as always, is whether the evidence will assist the jury without confusing them."
>
> *Id.* at 487 (footnote omitted).

Appellees' evidence assisted the jury in understanding the function and behavior of Eptam. Moreover, appellants were given ample opportunity to cross-examine the appellees' experts on these tests in order to illustrate any dissimilarities in conditions. The evidence in our view did not tend to confuse or mislead the jury.

█ Finally, appellees' evidence showing the characteristics and testing of Eptam was also admissible because the appellants alleged that the appellees had negligently and inadequately tested Eptam. In order to controvert these claims, it was necessary for appellees to present evidence concerning the behavior and testing of Eptam.

5. Rule 703 provides:

> "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

6. At all times relevant to this action, this exception was contained in Rule 44(q) of the Arizona Rules of Civil Procedure. Rule 44(q) is now incorporated in Rule 803(6) of the Arizona Rules of Evidence. Rule 44(q) provided:

For these reasons, we find the appellees were justified in showing the various situations under which they had tested and developed Eptam.

█ Next, appellants contend that the appellees' witnesses' testimony concerning the out-of-court tests constituted inadmissible hearsay. We disagree. With the exception of Dr. Benson, all the appellees' expert witnesses testified as to the result of their own experiences in using or testing Eptam. Expert witnesses may properly testify as to their firsthand observations or experiences. Such testimony does not constitute hearsay. *See Ball Corp. v. George*, 27 Ariz.App. 540, 556 P.2d 1143 (1976); *Spector v. Spector*, 17 Ariz.App. 221, 496 P.2d 864 (1972). The principle established in these cases has been enacted in Rule 703 of the Arizona Rules of Evidence.[5]

█ Dr. Benson described the results of several experiments on Eptam conducted by employees of Stauffer Chemical Company. While Dr. Benson did not conduct the experiments, he testified that the reports of the experiments had been made in the ordinary course of Stauffer's business and under his direction. Evidence concerning these experiments was, thus, properly admissible under the Arizona business records exception to the hearsay rule.[6] Although the test reports were not placed into evidence, they were made available to the appellants for their review and examination. The appellants were also given a full opportunity to cross examine Dr. Benson on these reports. A witness may summarize the information contained in voluminous reports or records as long as the information con-

> "1. The term 'business' includes every kind of business, profession, occupation, calling or operation of institutions, whether or not carried on for profit.
> 2. Any record of an act, condition or event, shall insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

tained in the documents would be admissible and the documents are made available to the opposing party for their inspection. *E. g., Midcontinent Broadcasting Co. v. North Central Airlines, Inc.*, 471 F.2d 357, 359–60 (8th Cir. 1973); *Meriwether v. Crown Investment Corp.*, 289 Ala. 504, 268 So.2d 780, 788 (1972). *See generally* IV Wigmore, Evidence § 1230, at 535 (Chadbourn rev. 1972). Rule 1006 of the Arizona Rules of Evidence now authorizes the use of summaries when the contents of "voluminous writings" cannot be conveniently examined in court.

We find that the trial court properly allowed the appellees to present evidence showing the general traits and behavior of Eptam and that the challenged evidence of prior testing of the chemical was admissible.

■ Appellants raise four other issues for our resolution. First, appellants argue that the trial court erred in permitting two of the appellees' witnesses, Dr. Pew and Robert Nyland, Ph.D., a professor in the Department of Horticultural Science and Landscape Architecture at the University of Minnesota, to testify that the lesions shown in several photographs taken of potatoes from appellants' ranch were not caused by Eptam. Appellants contend that neither Dr. Pew nor Dr. Nyland could render meaningful opinions as to the cause of the lesions shown in the pictures because both admitted that they could not state the cause of the lesions upon viewing the photographs alone. Although both experts may have admitted that they could not form an opinion as to what produced the lesions shown in the photographs, they were able to eliminate Eptam as the cause of the conditions shown in the photographs. We

believe that expert testimony which could exclude Eptam as the substance which caused the lesions shown in the photographs was both material and relevant to the issues raised by appellants in this case. Additionally, it was not improper for either expert to render such an opinion after viewing the photographs. An expert may base an opinion on exhibits which are properly admitted into evidence. *Carrizoza v. Zahn*, 21 Ariz. App. 94, 95, 515 P.2d 1192, 1193 (1973). *See also City of Phoenix. v. Schroeder*, 1 Ariz. App. 510, 405 P.2d 301 (1965), where the Court held that an expert's testimony and opinion based on viewing several police photographs taken at the scene of an automobile accident were admissible into evidence.

■ Next, appellants assert that the trial court failed to fully and fairly instruct the jury as to the nature and weight of the expert testimony presented at trial. The substance of the instructions requested by the appellants, however, was contained in other instructions given by the trial court.[7] As was stated in *Gibbons v. Williams*, 93 Ariz. 116, 378 P.2d 926 (1963), it is not error for a trial court to refuse requested instructions where other instructions properly inform the jury as to the issues raised during the trial. The court below did not abuse its discretion in refusing to give the requested instructions.

■ Finally, appellants contend that the trial court erred in permitting the jury to take notes throughout the trial and in providing the jury with a copy of the jury instructions. We believe that these procedures can be of benefit, especially in a complex case such as presented here. Appellants also failed to object to either of these procedures and, therefore, these

7. The court instructed the jury as follows:

"In determining the facts of this case you must decide how much credit to give to the testimony of each witness. You may consider his ability to observe or know the matters as to which he has testified, and whether he impresses you as having an accurate recollection of these matters. You may consider his manner while testifying and whether he might be influenced by some motive, bias or prejudice. You may consider any interest a witness may have in the case. You may consider whether he has made any inconsistent statements. You should also consider the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

In deciding how much credit to give to any expert's opinion you should also consider the extent of his knowledge and experience and the facts and circumstances surrounding the opinion."

claims of error cannot be raised on appeal. *Tryon v. Naegle,* 20 Ariz.App. 138, 142, 510 P.2d 768, 772 (1973).

█ In conclusion, after carefully reviewing the record in this case, we believe that there was sufficient, admissible evidence on which the jury could have found that Eptam did not cause the lesions which destroyed appellants' potatoes. This was a lengthy and complex case, and the jury was entitled to resolve the conflicts in the evidence.

Affirmed.

DONOFRIO and WREN, JJ., concur.