(96 South. 873)

## WESTERN UNION TEL. CO. v. THOMAS.
### (6 Div. 852.)

(Supreme Court of Alabama. May 10, 1923.
Rehearing Denied June 14, 1923.)

**1. Telegraphs and telephones ⟨☞⟩66(2)—Original telegram held competent evidence.**

In an action for damages for failing to promptly deliver to plaintiff a telegram filed with defendant by plaintiff's sister, where plaintiff testified that he had instructed his sister to notify him of the condition of his father, who was ill, the telegram received being a copy of the original, and the original telegram in the handwriting of plaintiff's sister was handed to him during the trial by defendant's attorney, the original was competent evidence to go to the jury.

**2. Trial ⟨☞⟩105(2)—Evidence admitted without objection to be considered.**

Evidence as to whether train ran on a particular day, not based on personal knowledge of witness, is to be considered, where admitted without objection.

**3. Telegraphs and telephones ⟨☞⟩73(3) — Whether addressee of delayed telegram could have reached his father before death held for jury.**

In an action for damages for failure to promptly deliver a telegram notifying plaintiff of the illness of his father, evidence *held* to raise question for the jury whether, if the telegram had been promptly delivered, plaintiff could have gone on an earlier train and reached his father's bedside before his death.

**4. Telegraphs and telephones ⟨☞⟩66(2)—Evidence as to mailing of telegram held admissible.**

In an action for damages for failure to promptly deliver a telegram addressed to plaintiff in care of postoffice, where there was evidence by defendant that the telegram was mailed promptly at 10:49 a. m., but the postmark on the envelope read 1:30 p. m., *held*, that evidence by plaintiff that mail was carried to the stamping department every 20 or 30 minutes was admissible to contradict defendant's witnesses, and also to show that, if the telegram had been mailed within a reasonable time, plaintiff would have received it in time to have gone to his father on 12:15 train and reached his bedside before his death.

**5. Telegraphs and telephones ⟨☞⟩66(4)—Evidence as to payment of charges for transmission of telegram held to warrant finding of injury to estate.**

In an action for damages for mental anguish caused by failure to promptly deliver a telegram to plaintiff, who alleged that he paid 50 cents for the transmission of the message to him, evidence by plaintiff that he had directed his sister to telegraph him if his father's condition became serious, thus making her his agent and rendering him liable if she paid the charges, together with evidence by defendant's operator that the notation on the envelope "charges paid" indicated that the charges were paid, *held* to show actionable injury to the estate of plaintiff, so as to entitle him to damages for mental anguish.

**6. Telegraphs and telephones ⟨☞⟩68(1)—Damages for mental anguish held recoverable.**

In an action for damages for delay in the delivery of telegram, where there was evidence indicating actionable injury to the estate of plaintiff and mental anguish, it was proper for the court to refuse a charge denying recovery for mental anguish.

**7. Trial ⟨☞⟩143—Conflicting proof and inferences for jury.**

Where some of the material facts alleged were in conflict by direct proof or by reasonable inferences, *held*, that it was not error to deny the general affirmative charge for defendant.

Appeal from Circuit Court, Jefferson County; J. Q. Smith, Judge.

Action for damages by John E. Thomas against the Western Union Telegraph Company. Transferred from Court of Appeals under Acts 1911, p. 449, § 6. From a judgment for plaintiff, defendant appeals. Affirmed.

Cabaniss, Johnston, Cocke & Cabaniss, of Birmingham; and Francis R. Stark, of New York City, for appellant.

The positive testimony of the messenger that he mailed the telegram at a certain hour could not be contradicted by evidence of a custom of the post office employés to take up mail at repeated intervals. McCullars v. Jacksonville Oil Mill Co., 169 Ala. 582, 53 South. 1025; Jeffries v. Pitts, 200 Ala. 201, 75 South. 959; Howard v. Tollett, 202 Ala. 11, 79 South. 309; Hartsell v. Masterson, 132 Ala. 275, 31 South. 618; Dubois v. Baker, 30 N. Y. 369; Brailsford v. Williams, 15 Md. 150, 74 Am. Dec. 559; New Haven County Bank v. Mitchell, 15 Conn. 206. There can be no recovery either for mental anguish or for any damages at all where the proof fails to show that the plaintiff is entitled to recover of the defendant the price paid for sending the telegram. Blount v. W. U. T. Co., 126 Ala. 105, 27 South. 779; W. U. T. Co. v. Krichbaum, 132 Ala. 535, 31 South. 607; W. U. T. Co. v. Blocker, 138 Ala. 484, 35 South. 468; W. U. T. Co. v. Waters, 139 Ala. 652, 36 South. 773; W. U. T. Co. v. Louisell, 161 Ala. 231, 50 South. 87; W. U. T. Co. v. Brown, 6 Ala. App. 339, 59 South. 329; W. U. T. Co. v. Emerson, 161 Ala. 221, 49 South. 820; McLendon v. W. U. T. Co., 15 Ala. App. 230, 73 South. 120. There can be no recovery of damages for mental anguish alleged to have been suffered by the plaintiff as a consequence of not reaching his father's bedside, when the evidence fails to affirmatively show that if the plaintiff had received the telegram sooner, he could have reached his father before he died. W. U. T. Co. v. Miller, 196 Ala. 620, 72 South. 168; W.

---

⟨☞⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

U. T. Co. v. McMorris, 158 Ala. 563, 48 South. 349, 132 Am. St. Rep. 46; Southwestern Tel. Co. v. Givens (Tex. Civ. App.) 139 S. W. 676; Hancock v. W. U. T. Co., 137 N. C. 497, 49 S. E. 952, 69 L. R. A. 403.

William Vaughan and Louis Silberman, both of Birmingham, for appellee.

Evidence of the schedules of trains was admissible to show plaintiff could likely have been transported to the bedside of his father. W. U. Tel. Co. v. Williams, 16 Ala. App. 420, 78 South. 414. The evidence was in dispute, and the affirmative charge was correctly refused to defendant.

MILLER, J. This is a suit for damages for mental anguish by John E. Thomas against the Western Union Telegraph Company, a corporation, for failing to promptly deliver to plaintiff a telegram filed by his sister with the defendant at Philcampbell, Ala., on December 11, 1920, to be delivered to him in Birmingham, which telegram reads as follows:

"John E. Thomas, care of Postoffice, Birmingham, Ala. Father is seriously taken worse yesterday. Come if possible. Lessie."

There was judgment on verdict in favor of the plaintiff, from which the defendant appeals.

The complaint contained three counts, and to each count the defendant filed three pleas. Pleas 1 and 2 were general issue, and plea 3 averred the message was in writing, was accepted by defendant for transportation and delivery, that it bore the name of John E. Thomas, care of Postoffice, Birmingham, Ala.; that the message was transmitted by it with reasonable promptness after acceptance by it, and within a reasonable time after its receipt in Birmingham it was deposited by the defendant in the mail in the postoffice at Birmingham, postage prepaid, in care of which office the message was addressed.

[1] The court did not err in allowing the original telegram to be introduced in evidence. There was sufficient testimony indicating it was the original filed with the defendant for it to go to the jury. The plaintiff testified that about two weeks prior to December 11, 1920, he visited his father, who was ill and had been in bad health for three years, and that he instructed his sister Lessie to notify him of his father's condition by mail, or, if his condition became serious, by telegraph. The telegram received by him on December 11, 1920, was a copy of this original, and the original was handed to him during the trial by defendant's attorney, in the handwriting of his sister Lessie. This made it relevant and competent to go to the jury.

[2, 3] On December 11, 1920, the plaintiff was and had been for several years prior thereto an employee of the postoffice at Birmingham as a mail carrier, making four rounds daily, and was in and out of the postoffice at different times that day from 7:30 a. m. to 3:50 p. m.; about half his time that day being devoted to inside work in the office. He received the telegram at 3:50 p. m. at the postoffice, and left at once in a taxi for the station, went on the Southern Railway from Jasper, leaving Birmingham on the Frisco at 4:10, p. m., and, upon reaching his father's home at 9:35, p. m., found his father had died at 9 p. m. The plaintiff testified on direct examination:

"The Illinois Central left at 12:15 p. m. If I had gone on the Illinois Central leaving at 12:15 p. m. I would have arrived at 2:15 p. m. * * * If I had gotten the message in time, I would have gone on the Illinois Central."

And on cross-examination he said:

"I don't know of my own knowledge whether the Illinois Central ran on that day, and whether it was on time or not. I did not see the train run, and I cannot say whether it ran or ran on time of my own knowledge."

There was no motion to exclude the testimony of the witness on direct examination as to the running of the Illinois Central train on that day because not based on personal knowledge. So it all went to the jury for them to determine whether the Illinois Central ran that day, whether it was on time, and if not how late. It became a question on that testimony for the jury to determine whether, if he had received the telegram within a reasonable time after its transmission to Birmingham, he could have gone on the 12:15 train and reached the bedside of his father before his death.

[4] There was evidence by defendant's witnesses that the telegram reached Birmingham at 10:37 a. m., and left defendant's office, within two or three blocks of the postoffice, at 10:49 a. m., and was dropped in the postoffice in a stamped envelope, addressed to plaintiff, care of the postoffice, Birmingham, Ala., a few minutes—two to three—after 10:49 a. m. The envelope containing the message had "Birmingham Dec. 11, 1:30 p. m. 1920, Ala." stamped postmark on it.

The plaintiff, on cross-examination, testified as follows:

"When a letter or anything that is mailed—any stamped article is mailed in the postoffice, is put into the box, we will say put into the drop in there, then it might be several minutes; they go up there every few minutes and get the drop; it might be several minutes from the time it went in the box before it was taken to the mailing station and stamped. I cannot say positively whether a letter after it is mailed, may stay in the postoffice an hour or two before it is stamped; I don't work in the mailing division and would not be positive about that."

After that cross-examination and under the issues in the case it was proper for the

court to permit plaintiff to testify on redirect examination that "there is no given time" to get letters out of the drop box and take them to the mailing station to be stamped, and "sometimes they go to the drop and get it—say 20 or 30 minutes * * * if it is unusually heavy possibly oftener than that." The court properly allowed plaintiff to prove he was well known in the postoffice to the employés. The court permitted plaintiff to prove by another witness that on that day at that time the mail was carried from the drops to the stamping department, to the best of his knowledge, every 15 or 20 minutes; and there was evidence that plaintiff was in the postoffice on that day from 11:01 a. m. until 11:40 a. m.

This testimony tended to contradict the evidence of the witnesses for defendant that the telegram in the envelope was mailed a few minutes after 10:49 a. m., and tended to show it was mailed between 1 and 1:30 p. m. It further tended to show that if the telegram had been mailed within a reasonable time after being filed and transmitted, that plaintiff would have received it in time to have gone to his father on the 12:15 train, and would have reached his bedside before his death. This testimony sheds some light on material matters in dispute; and any testimony which logically tends to prove or disprove the facts in issue should go to the jury for their consideration. 6 Michie Dig. 68, § 67 (1).

[5, 6] The complaint avers and claims that plaintiff paid the "sum of to wit, 50 cents" to transmit this message from Philcampbell to him in Birmingham. Was there any evidence to sustain this averment? The plaintiff testified he instructed his sister Lessie to send him a telegram if his father's condition got serious, giving his condition. This made her his agent, and if she paid it he became liable therefor. Did she pay it? She sent the telegram, and the envelope in which it was mailed to plaintiff had marked on it "charges paid," which notation was made by defendant; and a witness for defendant testified that "according to our form of receiving message it shows it was paid for, but I don't know that it was or what amount was paid." The witness in question was one of defendant's operators; and was the operator who received this message. He knew the forms and rules of the defendant, and it was proper for the court to allow him to testify that, according to the form of the defendant on which this message was received, it indicated the charges were paid when filed for transmission. From this evidence the jury could reasonably infer that the charges for sending the telegram were paid to the defendant, and that the plaintiff was liable therefor to his sister or the person who paid such charges for him. Some amount was paid defendant, but the amount paid is not shown by the proof; but, whatever amount was paid, plaintiff was liable for it. There was evidence indicating actionable injury to the estate of plaintiff and mental anguish; and the court did not err in refusing to give written charge No. 5, requested by the defendant, which reads as follows:

"(5) The court charges the jury that you cannot assess any damages in favor of plaintiff for or on account of mental pain and anguish alleged to have been suffered or sustained by the plaintiff." Blount v. West. U. Tel. Co., 126 Ala. 105, 27 South. 779.

[7] The defendant requested the general affirmative charge with hypothesis as to the complaint and each count thereof; they were in writing and separately requested by the defendant. The court refused each of them, and in this there was no error. Some of the material facts alleged in each count and some of the material averments of the special plea to each count were in conflict by direct proof or by reasonable inferences that could be drawn by the jury from proven facts. McMillan v. Aiken, 205 Ala. 40, headnotes 9–11, 88 South. 135.

The record is free from error, and the judgment is accordingly affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.