180 So.2d 522

Paul M. VINYARD et al.

v.

Carl E. DUCK et al.

6 Div. 795.

Supreme Court of Alabama.

Nov. 4, 1965.

Rehearing Denied Dec. 9, 1965.

688

Lange, Simpson, Robinson & Somerville, Birmingham, for appellants.

Rives, Peterson, Pettus & Conway, Birmingham, for appellees.

GOODWYN, Justice.

Appeal by defendants below (Paul Vinyard, F. G. Vinyard and Alden N. Vinyard, partners doing business as Maytag Sales & Service Company) from a judgment rendered on a jury verdict in favor of the plaintiffs (Carl E. and Gladys Duck). Defendants' motion for new trial was overruled. Included in the motion were several grounds charging insufficiency of the evidence to support the verdict.

The case went to the jury on counts 1, 4 and 5. Defendants' demurrer to these several counts being overruled, they entered a plea of the general issue in short by consent.

Count 1 alleges, in pertinent part, the following:

"Plaintiffs claim of the defendants the sum of Fifteen Thousand and No/100 Dollars ($15,000.00), as damages, for that heretofore on, to-wit, August 6, 1958, the defendants were engaged in the business of selling an appliance generally known as a food chest freezer, an appliance which defendants, their agent, servant or employee while acting within the line and scope of their employment by the defendants, advised plaintiffs was made and sold for the purpose of storing frozen foods and quick freezing other foods and plaintiffs aver that on, to-wit, August 6, 1958, plaintiffs purchased from the defendants such aforesaid appliance for their use in storing frozen foods and quick freezing other foods in their home and plaintiffs aver that their said intended use was made known to the defendants, their agent, servant or employee while acting within the line and scope of his employment for the defendants, and that there was an implied warranty of the defendants to the plaintiffs that said appliance was reasonably fit for said use for which it was made and sold when it was so used by the plaintiffs in the home of the plaintiffs and the plaintiffs aver that the defendants breached said warranty in that the said appliance was not reasonably fit for the said use for which it was made and sold but that on, to-wit, August 20, 1958, while said appliance was being used by the plaintiffs in their home for the said purpose of storing frozen foods and quick freezing other foods, said appliance was so unfit for such purpose that it became so hot that it caused the home of the plaintiffs to catch on fire and plaintiffs were caused to be injured and damaged as follows: * * * (home burned to ground, etc.)"

Counts 4 and 5 allege that, as a part of the contract of sale, defendants promised to perform service on the freezer when requested, and charge negligence on the part of defendants "by negligently failing to inspect the said freezer before advising the plaintiffs that the said machine was safe for continued use" (count 4), and "by negligently advising the plaintiffs that the said machine was safe for continued use" (count 5).

The freezer was sold by defendants' salesman, Hamlin, under its trade name of "Maytag." It was installed in the Ducks' jointly owned home. One week later Duck

telephoned Hamlin and told him that the freezer was "running hot" and that he was afraid his son would get burned. Hamlin stated that it was normal for the freezer to get hot and told Duck not to worry about it. Duck called Hamlin the next day and told him the freezer was too hot to touch. Hamlin assured him that there was nothing wrong with it. Two days later Duck went to see Hamlin at the store and complained that the machine was getting progressively hotter. He was assured again that it was operating normally. The following night the Ducks' home burned to the ground.

 Defendants contend that count 1 is insufficient because there is no allegation that, in purchasing the freezer, the Ducks relied on defendants' skill or judgment. It is also contended that there can be no recovery under this count because the freezer was bought under its trade name. These requirements are taken from Code 1940, Tit. 57, § 21, a part of the codification of the Uniform Sales Act. Section 21 provides, to the extent here applicable, as follows:

"§ 21. Implied warranties of quality.—Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows: (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. (2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality. * * * (4) In the case of a con-

tract to sell or a sale of a specified article under its patent or other trade name, there is not [sic] implied warranty as to its fitness for any particular purpose. * * *"

The reliance requirement is found in subsection (1). The trade name exclusion is found in subsection (4). Both of these subsections deal with implied warranties of fitness for a particular purpose. Our view is that the warranty alleged in count 1 is an implied warranty of merchantable quality, found in subsection (2).

It is well-settled that where the merchandise purchased is to be put to only one use, and that is the general and ordinary use for which the merchandise is sold, there is an implied warranty that the merchandise shall be reasonably fit for such use. The law in this field was reviewed in the recent case of Davidson v. Wee (1963), 93 Ariz. 191, 379 P.2d 744, 747, as follows:

"It is well established that the implied warranty of merchantable quality under § 15(2) of the sales act [Ala. Code 1940, Tit. 57, § 21(2)] is applicable to the situation wherein an article is requested and sold by brand name. Botti v. Venice Grocery Co., 309 Mass. 450, 35 N.E.2d 491, 135 A.L.R. 1387, Anno. 135 A.L.R. 1393 (1941); Giant Mfg. Co. v. Yates-American Mach. Co., 111 F.2d 360 (8th Cir., 1940); Ryan v. Progressive Grocery Stores, 255 N.Y. 388, 175 N.E. 105, 74 A.L.R. 339 (1931); Williston on Sales, 3rd Ed., § 236. Merchantability within the meaning of this statute is that the article is reasonably fit for the general uses it was manufactured to serve, whereas warranty of fitness under § 15 (4) relates to suitability for the specific purpose of the buyer for which fitness for general purpose may not be sufficient. Giant Mfg. Co. v. Yates-American Mach. Co., supra; Sperry Flour Co. v. De Moss, 141 Or. 440, 18 P.2d 242, 90 A.L.R. 406 (1933). These two warranties are not mutually exclusive. A warranty of fitness and a

warranty of merchantability may each arise upon the same situation where the purpose for which the product is purchased is the same as the purpose for which it is generally sold. The warranties may co-exist and recovery may be founded on either. D'Onofrio v. First National Stores, 68 R.I. 144, 26 A.2d 758 (1942); Giant Mfg. Co. v. Yates-American Mach. Co., supra; Ryan v. Progressive Grocery Stores, supra. The following statement quoted in the D'Onofrio case encompasses the reasoning upon which the foregoing principles are based.

" ' * * * "Merchantability means that the article sold [should] be of the general kind described and reasonably fit for the general purpose for which it shall have been sold. The buyer's particular purpose may be equivalent to nothing more than his general purpose, or it may relate to his more specific purpose. * * * Under the Sales Act a dealer who sells articles which ordinarily are used in but one way impliedly warrants fitness for use in that particular way, unless there is evidence to the contrary. This is only a warranty of merchantability." ' 26 A.2d 760."

Also see: 1 Williston on Sales, Rev.Ed. (1948), § 235, p. 604; Prosser, The Implied Warranty of Merchantable Quality, 27 Minn.Law Rev. 117.

In George v. Willman, (Alaska, 1963), 379 P.2d 103, 104, 105, 106, a "Great Lakes Mobile Home" trailer, purchased by the plaintiff from defendants, was destroyed by fire as the result of a leaking fuel line. On appeal from a judgment in favor of plaintiff, the court said:

" * * * The determinative questions are (1) whether there was an implied warranty under which appellants may be held liable for the loss; and (2) whether the evidence supports the finding that the fire was caused by loose fuel line fittings.

*"Implied Warranty.*

"The answer to the first question is governed by application of the Uniform Sales Act. Section 29–1–45 A.C.L.A. 1949 provides in part that—

" '(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality.'

"The implied warranty of merchantable quality includes a warranty that goods are reasonably fit for the ordinary purposes for which they are used. A mobile-home trailer is ordinarily used for the purpose of family living. It is not reasonably fit for that purpose when loose connections between the fuel line and an oil burning furnace permit oil to leak out and accumulate in the vicinity of the furnace and create a fire hazard. A trailer that is sold with such a defect is not of 'merchantable quality', within the meaning of the statute.

"But before an implied warranty can arise, the goods must have been 'bought by description from a seller who deals in goods of that description.' That was done here. The sales contract executed by Willman and appellants specified that he was purchasing a '55 x 10' 2 Bedroom Mobilehome, Great Lakes Make, SA–FK–Winthrop Model.' Such a designation of an article by trade name is itself a description sufficient to meet the statutory requirement that the article be 'bought by description' in order to give rise to an implied warranty. [Knapp v. Willys-Ardmore, Inc., 174 Pa.Super. 90, 100 A.2d 105, 107–108 (1953).] And appellants dealt in 'goods of that description', since they had been authorized to act as dealers in the sale of Great Lakes Mobile Homes by the manufacturer of that product.

* * * * * * *

"The warranty of fitness for a 'particular purpose' is considered in a separate subdivision of the sales act [Section 29-1-45(1)]. We are not concerned with that type of warranty. The trailer was purchased for a general purpose—that of family living. It was not purchased for any special or particular purpose which would not have been satisfied by mere fitness for the general purpose. We are concerned here only with the warranty of merchantable quality under section 29-1-45 (2), and a sale of an article by trade name does not negate the implied warranty under that section. [Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 76, 75 A.L.R.2d 1 (1960); Kohn v. Ball, 36 Tenn.App. 281, 254 S.W.2d 755, 758 (1952); Pabellon v. Grace Line, Inc., 191 F.2d 169, 172 (2d Cir.), cert. denied, Coston Supply Co. v. Pabellon, 342 U.S. 893, 72 S.Ct. 201, 96 L.Ed. 669 (1951).]

\* \* \* \* \* \* \*

"We hold that by virtue of the warranty of merchantable quality implied by law, appellants had a contract obligation to furnish Willman with a trailer that was reasonably fit for the purpose of family living, and that they breached their obligation by providing a trailer with loose connections in the oil line fittings adjacent to the furnace."

Count 1 alleges that the food freezer "was made and sold for the purpose of storing frozen foods and quick freezing other foods," that the Ducks bought the freezer for such use, and that it was not reasonably fit for such use. We hold this to be an allegation of the existence and breach of an implied warranty of merchantable quality. In such case there is no necessity that, in purchasing the goods, the buyer should rely on the skill or judgment of the seller, nor does the trade name exclusion apply.

Defendants raise the point that Mrs. Duck is not entitled to recover because she was not a party to the contract with defendants. The conditional sales contract shows only Mr. Duck as the purchaser of the freezer. However, there is evidence that both Mr. and Mrs. Duck bought the freezer. No objection was made to this testimony. Accordingly, such evidence was before thhe jury for consideration, even though it might have been inadmissible on proper objection or subject to exclusion on proper motion. See: Malone v. Hanna, 275 Ala. 534, 536, 156 So.2d 626; Franklin Life Ins. Co. v. Brantley, 231 Ala. 554, 557, 165 So. 834; Western Union Tel. Co. v. Thomas, 209 Ala. 657, 658, 96 So. 873.

Assuming there was a variance between the allegations and the proof, the defendants are not in a position to complain. Rule 34, Rules of Practice in Circuit and Inferior Courts (Code 1940, Tit. 7, Appendix, p. 1035) provides that the trial court will not "be put in error for refusing the general charge predicated upon such variance, unless it appears from the record that the variance was brought to the attention of the said trial court by a proper objection to the evidence." See: Kurn v. Counts, 247 Ala. 129, 132, 22 So.2d 725.

It is contended that there was insufficient "selective" evidence showing a causal relationship between the defective freezer and the fire. The evidence showed that the freezer got progressively hotter after installation. The testimony of Mrs. Duck tended to show that the fire began where the freezer was located. There was no evidence tending to establish any other agency as being responsible for the fire. In Bradford v. Moore Brothers Feed and Grocery, 268 Ala. 217, 222, 105 So.2d 825, 829, we discussed the problem of proof of causal relationship in warranty cases:

"\* \* \* No absolutely positive causal connection is required. In the very nature of things no direct proof of the cause of the trouble can be giv-

en. Direct proof is not necessary and circumstantial evidence may be resorted to. The requirements of the law are satisfied if the existence of this fact is made the more probable hypothesis, when considered with reference to the possibility of other hypotheses. * * * Where fair-minded men may honestly differ as to the conclusion to be reached from the evidence, controverted or uncontroverted, the case may be submitted to the jury. * * *"

We feel that the evidence was sufficient to support the verdict. The decision of a trial court refusing to grant a motion for a new trial, on the ground of the insufficiency of the evidence, will not be reversed unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it is wrong and unjust. See: Louisville & Nashville Railroad Co. v. Cooke, 267 Ala. 424, 430, 103 So.2d 791; Cobb v. Malone, 92 Ala. 630, 9 So. 738. Such is not the case here.

■ Finally, the defendants charge excessiveness of the $10,000 verdict. The testimony as to the value of the house and its contents ranged from $8,000 to $12,500. The court is very reluctant to substitute its judgment for that of the jury and the trial court, and will not do so, unless the verdict is so excessive as to indicate passion, prejudice, corruption, or mistake on the part of the jury. See: Culpepper & Stone Plumbing & Heating Co. v. Turner, 276 Ala. 359, 366, 162 So.2d 455; Liberty National Life Insurance Company v. Weldon, 267 Ala. 171, 190, 100 So. 2d 696, 61 A.L.R.2d 1346. We find no basis for applying that principle here.

The judgment is due to be, and is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and COLEMAN, JJ., concur.