190 So.2d 730

**MUTUAL OF OMAHA INSURANCE COMPANY**

v.

**Freddie Hugh LANG et ux.**

**8 Div. 21.**

Court of Appeals of Alabama.

Sept. 20, 1966.

--------♦--------

Lusk & Lusk, Guntersville, for appellant.

Clark E. Johnson, Jr., Albertville, for appellees.

CATES, Judge.

This appeal was submitted without oral argument October 21, 1965, with a single assignment, viz., that the court below erred in overruling appellant's motion for new trial.

The Langs brought suit for $500 against Mutual of Omaha for breach of a hospital or medical indemnity policy for expense within the indemnifying agreement on account of Mrs. Lang's averred foreshortened pregnancy which normally would have resulted in childbirth more than ten months after the policy date.

The plea of the company was that, "The allegations of the complaint are not true." Thus framed, trial was had on the issues. to a jury January 19, 1965.

Verdict was in favor of the plaintiffs with $100 damages. Judgment was rendered accordingly. Motion for new trial duly presented and set down was argued and overruled April 9, 1965.

I.

The policy was issued January 15, 1963. Mrs. Lang gave birth to a child November 3, 1963, some 292 days later.

The policy provided:

"* * * The Company will pay the expenses incurred for childbirth occurring more than ten months after the Policy Date, and for premature birth, miscarriage, extrauterine pregnancy or abortion occurring during any pregnancy which normally would have resulted in childbirth more than ten months after the Policy Date, * * *."

Measured from the 15th of each month from January 15 on, ten months would have elapsed November 15, 1963, some twelve days after the child was delivered.

Mrs. Lang testified that the child weighed six pounds four ounces at birth. She considered that she conceived February 17.

Her physician testified that normal gestation takes nine calendar months, i. e., 280 days, more or less. "As long as the weight of the baby is within the realm of a mature baby it is not possible to tell from observing a baby whether it was born two weeks early or two weeks late from a normal period of nine months." Appellant's brief.

"*  *  * If it were several months premature there would be several differences in appearances from a normal full term baby, such as the absence of fingernails and toenails. For a premature baby, say weighing from four and a half to five and a half pounds, there would be no difference in appearance in a premature baby of five and a half pounds as opposed to a baby six pounds and four ounces except in the size of the baby. There is no record of my recording anything about the Lang baby which indicated that it was premature. *  *  *

*       *       *       *       *       *

"*  *  * On the basis of my examination and treatment of Mrs. Lang and from the information she gave me and my observation of the child, this was not in my opinion a premature birth. *  *"
—as quoted from Appellant's brief.

If Mrs. Lang's estimate of her date of conception is accurate, the gestation took 259 days. Her doctor's testimony contains the following (as taken from Appellant's brief):

"*  *  * I cannot say that I saw the Lang baby at the time of its birth. When I was talking about premature babies, I was talking with reference to weight rather than time. The only reference that as a doctor I could make as to prematurity or maturity is on the basis of weight. I have no accurate way of calculating time. In other words, the medical profession has no way of calculating the prematurity from the standpoint of time. If a baby is born 260 days after the date of conception and weighs over five and a half pounds, that would not be considered in the medical profession as a premature birth. If a baby was born 264 days after the date of conception and weighed over five and a half pounds it would not be a premature birth."

Counsel for the Langs adds:

"GINGER LANG:

"Witness testified that it was her best judgment and memory that her last menstrual period was on January 28. That witness was sick with a kidney infection for a week during her pregnancy. That a normal gestation period is nine months.

"DR. JOE D. BONDS:

"We should re-emphasize this witness testified that conception could occur at any time during the menstrual cycle and there was no way the medical profession could accurately determine the time a baby had been carried. *That the period of gestation could vary from woman to woman and even from baby to baby, with a normal time of nine months.* Witness further testified that he could not say that he had seen the baby at the time of its birth. Witness further testified that he had no accurate way of calculating, and that the medical profession had no way of calculating, prematurity from the standpoint of time." (Italics added.)

## II.

An appeal in a civil case resembles a view of a locked room. The appellant exposes only so much to view as he affords by argued assignments of error. The brief is comparable to an exercise to establish a proposition in geometry, moving from facts applied to accepted principles to the ultimate quod erat demonstrandum. Assignment and argument are indispensable.

Here appellant's single assignment is assimilative: theoretically it invokes de novo each and every well stated ground assigned in moving for new trial below. Louisville & N. R. R. Co. v. State, 276 Ala. 99, 159 So.2d 458.

Of the fourteen grounds of the motion, appellant in brief lists only 1, 3 and 10 in his argument. These grounds were:

"1. The verdict of the jury is not sustained by the great preponderance of the evidence."

"3. The verdict of the jury and the judgment entered thereon are contrary to the great weight and preponderance of the evidence in the case."

"10. The verdict of the jury is contrary to the instructions of the Court as contained in the following written charge given by the Court at the request of defendant before the jury retired:

"'8. Unless you are reasonably satisfied from the evidence that the birth of the Lang child was a premature birth and that it occurred during a pregnancy which normally would have resulted in childbirth more than 10 months after the Policy Date of the policy sued on, then you cannot find for the plaintiffs in this case.'"

Not having been urged in brief, the other points raised by the motion for new trial are deemed abandoned. Smith v. Pierce, 273 Ala. 321, 134 So.2d 201 (hn. 8).

### III.

The policy does not define "premature birth" other than by implication. The phrase which uses that expression provides indemnity for an earlier than normal birth.

Within the first ten months of the policy term the norm for compensable pregnancy is, in effect, a period of "ten months and x days."

The policy, however, also recognizes a class of exceptions. This class is embraced in the hypothesis that the pregnancy would have lasted more than the policy's first ten months leading to still birth or live birth falling under "premature birth, miscarriage, extrauterine pregnancy, or abortion."

This case was submitted to the jury (a) on whether or not Mrs. Lang's baby was born prematurely and (b) whether or not her pregnancy would have normally gone beyond November 15.

We deduce this from the trial judge's granting the appellant's request for the following written instruction:

"8. Unless you are reasonably satisfied from the evidence that the birth of the Lang child was a premature birth and that it occurred during a pregnancy which normally would have resulted in childbirth more than 10 months after the Policy Date of the policy sued on, then you cannot find for the plaintiffs in this case."

Without objection, Mrs. Lang testified that in her best judgment she conceived February 17.

Appellant contends that the "normal" period of gestation from conception to delivery is 267 days. Therefore, "normally" the pregnancy in question would have terminated November 11, 1963.

On the other hand, appellee refers us to the language in his summary of Dr. Bond's testimony, particularly that in italics:

We point out:

1) The period of 267 days from conception was used by Dr. Bonds as the "average" (R. 34);

2) Dr. Bonds did not attend Mrs. Lang at the birth in question (R. 39);

3) On cross, Dr. Bonds testified that the medical profession has no way of calculating prematurity from the standpoint of time (R. 39); and

4) Mrs. Lang was examined on redirect as follows:

"Q Do you know the gestation period?

"A Yes, I have read it, let's see—

"MR. LUSK: I am going to object to the witness answering. It might be different for different people, you can't set a certain date.

"Q But normal gestation, I will ask you if it isn't 9 months?

"A Oh, yes.

"MR. LUSK: We object unless the witness is qualified to answer the question. I don't know that she has the qualifications to answer a question of that sort. We are dealing so closely with days—

"MR. JOHNSON: If it please the Court, it is something that everybody knows. That is something that the Court knows that normal gestation for human beings is approximately 9 months, and I think the Court has a right to take judicial knowledge of the fact. I think this young lady can testify to it,—anybody could.

"THE COURT: I believe Mr. Johnson is offering it as to the right rather than its admissibility, so I overrule the objection.

"MR. LUSK: We except.

"MR. JOHNSON: All right, that's all. Plaintiffs rest."

■ As to the objection to Mrs. Lang's testifying that normal gestation was nine months (i. e., at least 270 days), we find no ground of the motion for new trial complaining of the trial judge's ruling. Hence, under the law of the case doctrine, Mrs. Lang's evidence was before the jury and made, prima facie, sustention of the plaintiff's burden.

■ If credited, it sufficed to support the verdict. We know of no rule of law which makes a physician's estimate of the duration of pregnancy controlling on a jury. Indeed, we note that in Allred v. State, 151 Ala. 125, 44 So. 60, a doctor put the tolerance in a range from 240 days to 300 days.

■ To bolster this conclusion with authority, we quote from Vinyard v. Duck, 278 Ala. 687, 180 So.2d 522:

"We feel that the evidence was sufficient to support the verdict. The decision of a trial court refusing to grant a motion for a new trial, on the ground of the insuf-

ficiency of the evidence, will not be reversed unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it is wrong and unjust. See: Louisville & Nashville Railroad Co. v. Cooke, 267 Ala. 424, 430, 103 So.2d 791; Cobb v. Malone, 92 Ala. 630, 9 So. 738. Such is not the case here."

The judgment appealed from is due to be

Affirmed.