**Roy E. SMITH, Plaintiff,**

v.

**CROSROL, INC., a corporation; et al., Defendants.**

**Civ. A. No. 79–79–E.**

United States District Court,
M. D. Alabama, E. D.

Sept. 29, 1980.

J. Mack Clayton, W. Scears Barnes, Jr., and W. Larkin Radney, III, Alexander City, Ala., for plaintiff.

H. E. Nix, Jr., Montgomery, Ala., for defendant Pneumafil.

## MEMORANDUM OPINION

VARNER, Chief Judge.

This cause is now before the Court on Defendant Pneumafil's motion for summary judgment filed herein July 3, 1980. Upon consideration of the motion, the briefs, the cited authorities and the other materials relevant to the motion, this Court is of the opinion that there are no material issues of fact, and Pneumafil is entitled to judgment as a matter of law.

## FACTS

The pleadings, affidavits and answers to interrogatories submitted to this Court disclose the following material facts.

1. Defendant, Crosrol, Inc., is the manufacturer of the "Crosrol Center Section" which is used in the cotton textile industry to create "tandem cards". The "center section" enables mills to put two single carding units together (tandem card), thus speeding and improving performance.

2. While an employee of Russell Corporation in Alexander City, Alabama, the Plaintiff was injured on May 18, 1976, while operating a "Crosrol Center Section".

3. The "Crosrol Center Section" in question was manufactured and installed by Crosrol, Inc., at Plant 4 of Russell Mills.

4. Defendant Pneumafil designs and manufactures lint and dust control systems for textile plants. Pneumafil was contacted by Russell to design, supply and install a lint and dust control system for Plant 4, which Pneumafil did pursuant to its contract with Russell Corporation (Equipment Order Sheet 1–11148).

## CONCLUSIONS OF LAW

Plaintiff alleges in his complaint that Defendant Pneumafil has breached an implied warranty of merchantability, an implied warranty for particular purpose, and an expressed warranty in its contract with Russell Corporation by failing to properly "guard" the Crosrol Center Section in question. Defendant Pneumafil, in its motion for summary judgment, contends its sole purpose, obligation and duty under its contract with Russell Corporation was to design, supply and install a lint and dust control system. Therefore, Pneumafil contends it had no duty to guard and, thus, is not guilty of any breach of such duty.

## I.

Section 7–2–314, Code of Alabama [1975], provides that, when the seller of goods is "a merchant with respect to goods of that kind", then "a warranty that the goods shall be merchantable is implied in a contract for their sale." Goods include "specially manufactured goods" (§ 7–2–105) as well as "equipment if they are used or bought for use primarily in business" (§ 7–9–109). Therefore, the transaction between Pneumafil and Russell appears to fall within those transactions covered by § 7–2–314.

Was the equipment sold to Russell by Pneumafil "merchantable" under § 7–2–314? The Alabama Supreme Court has determined that, where goods are purchased for the general and ordinary use for which the goods are sold, there is an implied warranty that the merchandise shall be reasonably fit for such use. *Vinyard v. Duck*, 278 Ala. 687, 180 So.2d 522 (1965). Therefore, if the lint and dust control system sold to Russell by Pneumafil was reasonably fit for its ordinary use, that is, to filter lint and dust from the air around the tandem card, then there was no breach of the implied warranty.

■ In his affidavit, submitted by Pneumafil with its motion for summary judgment, Mr. R. Hovan Hocutt asserts that the lint and dust control system was of high quality and fit for the ordinary purposes for which such goods are used. Plaintiff has failed to supply evidence that the equipment supplied by Pneumafil was not fit for the ordinary purpose of filtering the air. This Court is, therefore, of the opinion that Defendant Pneumafil's motion for summary judgment should be granted as to the count alleging breach of the warranty of merchantability under § 7–2–314.

## II

Section 7–2–315, Code of Alabama [1975], provides:

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is an implied warranty that the goods shall be fit for that purpose."

The official comments to § 7–2–315 note that, whether or not a warranty for a particular purpose arises, "is basically a question of fact to be determined by the circumstances of the contracting" in any individual case.

In the present case, Pneumafil has provided affidavits in support of its contention that the lint and dust control system sold to Russell is "well fit and suitable for the particular purpose for which it was purchased–to capture lint and dust." Plaintiff has not supplied any probative evidence that Pneumafil's system is not fit for the purpose of capturing lint and dust. The argument made by the Plaintiff seems to be that the purpose for which the equipment was sold to Russell was not just to capture lint and dust but also to "guard" the machine as well. Plaintiff's only response to Pneumafil's motion for summary judgment was his reference to the answers to five interrogatories made by Mr. Raymond Toher, a vice president for Crosrol, Inc. Basically, these answers reveal that Mr. Toher believed that Pneumafil was responsible for guarding the machines which Crosrol, Inc., sold to Russell.

■ Inquiry into the intent of the parties to a contract may be permitted when the contract is shown to be ambiguous. However, it is a general rule of contract law that, when parties reduce their agreements to writing, the writing, in the absence of mistake or fraud, is the sole expositor of the transaction and the intention of the parties. *DeKalb Agresearch v. Abott*, 391 F.Supp. 152 (D.C.Ala.1974), affm'd. 511 F.2d 1162. Here, there is no contention that Pneumafil had any duty to install safety devices on its equipment which it warranted only to control lint and dust when duly installed as a part of a total manufacturing system, nor can there be, in the opinion of this Court in view of the evidence presented.

■ Here, the Plaintiff seeks to rebut the written contract between Pneumafil and Russell with the opinion of a nonparty to the contract. It has been held that the opinion of a nonparty, as to the meaning of the terms of a contract, is not admissible unless it is shown that the terms in question are ambiguous or are not used in their ordinary meaning. *La Chemise Lacoste v. Alligator Co.*, 59 F.R.D. 332 (D.C.Del.1973). See also, Wigmore, Evidence, § 1971 (3rd ed.). The admissibility of evidence on a motion for summary judgment is "subject to the usual rules relating to form and admissibility of evidence." *Munoz v. International Alliance of Theatrical Stage Employees & Moving Picture Machine Operators of the U. S. & Canada*, 563 F.2d 205 (5th Cir. 1977).

■ The intent of Pneumafil and Russell is clear from the contract–that is a contract for the design, supply and installation of a lint and dust control system for Russell Corporation's Plant No. 4. There was no agreement, expressed or implied, by Pneumafil to insure that such a system, when attached as a part of the total manufacturing system, would be safe. Accordingly, Pneumafil's motion for summary judgment should be granted.