**In re Dr. Alan Dale CLARK, Debtor.**

**Dr. Alan Dale CLARK, Plaintiff,**

v.

**Mary Carole Bray CLARK, Defendant.**

**Bankruptcy No. 88–11590.**
**Adv. No. 89–1002.**

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

Sept. 22, 1989.

L.E. Maioriello, Augusta, Ga., for plaintiff.

Louis Saul, Augusta, Ga., Timothy C. Batten, Atlanta, Ga., for defendant.

## MEMORANDUM AND JUDGMENT

JOHN S. DALIS, Bankruptcy Judge.

Dr. Alan Dale Clark (hereinafter "Dr. Clark"), debtor in the underlying Chapter 7 bankruptcy petition, has brought this adversary proceeding pursuant to 11 U.S.C. § 523(a)(5) and Bankruptcy Rule 7001(6) seeking a determination that a portion of his obligations under a judgment and decree of total divorce from Mary Carole Bray Clark (hereinafter "Ms. Clark") are dischargeable in his Chapter 7 case. In

response, Ms. Clark, by way of counter-claim, seeks a determination not only that the portion of the final divorce decree brought to issue by Dr. Clark is nondischargeable, but also that all outstanding obligations due from Dr. Clark under the divorce decree are nondischargeable. Based upon evidence put forth at trial and legal authority referenced by counsel for the parties, this court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1) By final judgment and decree in the case of *Mary Carole Clark v. Alan Dale Clark, M.D.*, No. D–30336, (Superior Court of Fulton County, Georgia dated March 6, 1986) [1] the parties to this adversary proceeding were divorced. The final judgment and decree of total divorce incorporates by reference a settlement agreement dated March 3, 1987. The terms of the settlement agreement are not at issue. The settlement agreement provides in pertinent part: At page 1:

> Whereas, the parties are desirous of settling all questions of division of property, child support, visitation, debt liability, etc., ...

At page 2: 2. *CARE, CUSTODY AND CONTROL OF THE MINOR CHILDREN*

> The Wife [Ms. Clark] shall have both temporary and permanent care, custody and control of the minor children of the parties, to-wit: Taylor A. Clark, born June 6, 1980; Catherine I. Clark, born March 10, 1982 and Jennifer A. Clark, born March 25, 1985.

At page 7: 3. *CHILD SUPPORT*

> (a) The Husband [Dr. Clark] shall make the following periodic payments to the Wife. The sum of $500.00 per month per child as support for the minor children. Such payments shall commence, effective February 1, 1987, and shall terminate when the child reaches the age of eighteen (18) years, marries, enters the armed forces, ceases to live with the Wife, becomes self-supporting, or dies, which-

ever event first occurs. Said child support payments as set forth above shall be paid by the Husband directly to the Wife in full on or before the first day of each month. Said payments shall be made directly to the Wife at her place of abode or at any place that she may designate ...

> (d) As additional support for the minor children, the Husband agrees to pay one-half (½) the cost of camp for each of the minor children, up to a maximum of $350.00 per child per year.

> (e) As additional support for the minor child, Ivy, the Husband agrees to pay $50.00 per week for day care from the time the Wife obtains employment up until said minor child is enrolled in public school.

> (f) As additional support, the husband agrees to pay fifty percent (50%) of the cost incurred by the minor children in participating in extracurricular activities, not to exceed $350.00 per year per child, such activities including, but not limited to, baseball, football, soccer, piano lessons, and ballet and tap dancing lessons, or any other activity of a recreational or educational nature.

At page 9: 4. *HEALTH AND HOSPITALIZATION INSURANCE*

> As additional support for the minor children, the Husband agrees to pay for and maintain a major medical and hospitalization insurance policy for and on behalf of the three children of the marriage, up through and including for four (4) years of college ...

At page 10: 5. *LIFE INSURANCE*

> As additional support for the minor children, the Husband agrees to provide a term life insurance policy in the principal amount of $200,000.00. Said term life insurance policy shall be payable irrevocably to the three minor children up through and until the time that they complete college and is intended to provide child support for the children in the event of the husband's untimely death. In the

---

**1.** While the decree of divorce is dated 1986, the year is in error, as the actual entry date was March 6, 1987.

event that the insurance policy is not in force and effect, the Husband agrees that his children may have a claim against his estate for this amount of insurance that should have been in force and effect. The husband also agrees upon request and at least once annually to provide proof that said insurance is in force and effect.

At page 11: 6. *COLLEGE EDUCATION*

As additional support for the minor children, the Husband agrees to pay for tuition, books and matriculation fees for each one of the minor children to attend a four-year college. The Husband's obligation hereunder, however, shall be limited to the charge at the University of Georgia for books and tuition and matriculation fees at the time each child will enter college. Nothing contained herein shall require any one of the children to attend the University of Georgia. The Husband's obligation herein is limited to the charge for an in-state student. Said payment of tuition, books, and matriculation fees shall be payable to any college attended by the children.

At page 13: 7. *DISPOSITION OF FAMILY HOME*

Upon the close of sale of said home, the parties hereto agree that the first $50,-000.00 of the proceeds received shall be paid directly to the Wife. (Proceeds are defined as the sales price less the three (3) mortgages below not including any past due principal and interest or legal cause associated with the mortgage as being past due.) All proceeds received after the initial $50,000.00 shall be equally split between the parties; subject, however, first to the payment of the three (3) outstanding mortgages to (i) Manufacturer's Hanover, (ii) Dr. Malcom Dulock, and (iii) Fidelity National Bank, the total amount now owing on said mortgages to be approximately $410,-000.00.

It is further agreed and stipulated that at the time of the execution of this Agreement the mortgages are in arrears and the home is about to be foreclosed upon. The Husband shall be solely responsible for payment of all past due

amounts and any attorney's fees incurred because of any legal action, and the Wife shall have no responsibility for the past due payments and legal costs on the house for either the first, second or third mortgages. All such arrearages and attorney's fees, now and hereafter, will be paid out of the Husband's proceeds as defined above. It being the specific agreement that the Husband is responsible for all three (3) mortgages on the family home.

It is the specific agreement between the parties that the payment of the first $50,-000.00 of sales proceeds comes in the nature of support for the minor children, and it is a specific agreement between the parties that in the event, for whatever reason, the Wife does not receive $50,-000.00 proceeds from the sale of the house, then the wife shall receive in the nature of support for the children the sum of $10,000.00 per year for five (5) years, with the first $10,000.00 payment being due within sixty (60) days after the house is sold or foreclosed upon and thereafter on an annual basis. It is the specific intent of the parties that this is a support obligation for the children and not in the nature of property division . . .

At page 15: 8. *PAYMENT OF MEDICAL EXPENSES*

It is specifically agreed between the parties hereto that there are still outstanding medical bills and outstanding support obligations that the husband owes to and on behalf of the Wife. The Husband agrees that it his responsibility to pay the outstanding medical bills and not the responsibility of the Wife, and notwithstanding the fact that there is going to be a final order in this case, the provisions of the temporary order are herewith specifically emerged into this order and the Husband is obligated to pay the outstanding medical bills and support obligations contained in said temporary order.

The Husband agrees to pay for future dental work incurred by the Wife on her behalf, said payments to be paid at the rate of $400.00 for the period February

1, 1987 to July 1, 1987; $400.00 for the period of August 1, 1987 to February 1, 1988 and then $500.00 per year, due at the rate of $41.66 per month, with a maximum payable of $3,000.00 for such dental work.

At page 19: 12. *ALIMONY*

There is no alimony being paid by either party, and both parties specifically are relinquishing and forever releasing any claimed alimony in the future.

At page 19: 13. *DEBTS OF THE PAR-TIES*

The following listed debts of the parties are hereby acknowledged by the Husband who agrees to pay such debt in full as it becomes due and payable, including, but not limited to: ... Fidelity National Bank.... If legal action is brought against the Wife to recover any of the above-listed debts, the Husband agrees to indemnify and hold her harmless in addition to pay all attorney's fees and costs of collection which she may incur as a result of such liability.

2) At the time the settlement agreement was executed, Dr. Clark was debtor-in-possession in another bankruptcy proceeding. *In re: Alan Dale Clark, M.D.,* Chapter 11 No. 87–00857 (Bankr.N.D.Ga.1987).

3) Unfortunately, the lenders foreclosed upon the real estate referenced in the settlement agreement and identified as the family home. Since there were no proceeds from the sale of this premises, the provisions of the agreement relative to the payment of five (5) annual $10,000.00 payments became effective. As of the date of trial of this adversary proceeding, two (2) annual payments have come due, and Dr. Clark admits he has failed to meet those payment obligations. He seeks to have this obligation discharged in his Chapter 7 case.

4) Subsequent to the entry of the final judgment and decree of divorce, Fidelity National Bank filed a complaint against Dr. Clark and Ms. Clark seeking to recover a deficiency following the foreclosure of the family home. *Fidelity National Bank v.*

*Alan D. Clark and Carole B. Clark, No. D–54240 (Superior Court of Fulton County, Georgia.)*

5) Dr. Clark does not deny that he has failed to make the payments for medical and dental expenses called for in the agreement in the amount of Three Thousand Five Hundred Twenty–Five and No/100 ($3,525.00) Dollars; however, he contends that Ms. Clark has failed to present the majority of these claims to him. As to the dental expenses, he does not deny that he has not paid these sums, but contends that Ms. Clark received payment from another source. In excess of $2,500.00 of medical claims sought by Ms. Clark in this proceeding are listed as unsecured creditors in Dr. Clark's underlying bankruptcy case. As to the balance of the provisions of the settlement agreement as set forth above, Dr. Clark does not deny that these obligations are in the nature of child support and are nondischargeable in his bankruptcy proceeding pursuant to 11 U.S.C. § 523(a)(5).[2]

## CONCLUSIONS OF LAW

In determining whether a particular debt falls within one of the exceptions of § 523, the statute should be strictly construed against the objecting creditor and liberally in favor of the debtor. Any other construction would be inconsistent with the liberal spirit in favor of discharge in order to effectuate a fresh start for the debtor that has always pervaded the entire bankruptcy system. *3 Collier on Bankruptcy* § 523.05(A) (L. King 15th Ed.1989); *In re: Black,* 787 F.2d 503 (10th Cir.1986). In addition to this strict narrow construction given § 523, the burden of proof rests with the party opposing dischargeability, and that burden requires proof by clear and convincing evidence. *Schweig v. Hunter (In re: Hunter),* 780 F.2d 1577 (11th Cir. 1986); *In re: Hyers,* 70 B.R. 764 (Bankr.M. D.Fla.1987). This burden of proof remains with the party opposing dischargeability regardless of the procedural posture of the case. It is irrelevant whether the plaintiff

---

**2.** At trial, Ms. Clark withdrew her request for a determination of non-dischargeability of debt

from Dr. Clark's failure to account to her for proceeds from the sale of a tractor.

is the debtor or creditor seeking a determination of dischargeability. The burden of proof does not depend upon which party brought the action, but which party opposes dischargeability. In the present action, Ms'. Clark bears the burden of proving by clear and convincing evidence that the provisions of the settlement agreement that are at issue are obligations of Dr. Clark which are "actually in the nature of alimony, maintenance or support." 11 U.S.C. § 523(a)(5)(B).

▌ The language of § 523(a)(5) suggests a simple inquiry by this court as to whether the obligation can legitimately be characterized as being in the nature of support. *In re: Harrell,* 754 F.2d 902 (11th Cir.1985). Under circumstances as in the present action, wherein the obligations at issue are contained in a voluntarily executed settlement agreement between the spouses, a determination that those obligations are actually in the nature of alimony or support requires a determination that the parties had a mutual intent to have the obligations considered as such support at the time the agreement was made. *Long v. West (In re: Long),* 794 F.2d 928 (4th Cir.1986), *citing Melichar v. Ost,* 661 F.2d 300, 302 (4th Cir.1981), *cert. denied,* 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 442 (1982). When the parties have reduced their agreement to writing, the writing in absence of ambiguity, mutual mistake or fraud is the sole expositor of the transaction and the intention of the parties. *Smith v. Crosrol, Inc.,* 498 F.Supp. 697 (M.D.Ala.1980). To allow the debtor to testify as to his subjective intent when signing an otherwise unambiguous agreement would be a classic violation of the parol evidence rule. *See Kimbell Foods v. Republic National Bank,* 557 F.2d 491 (5th Cir.1977), *aff'd sub nom., U.S. v. Kimbell Foods,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979); *In re: Atchison,* 832 F.2d 1236 (11th Cir.1987); O.C.G.A. § 13–2–2. The fact that the agreement may be later incorporated by reference into a judicial decree does not change the fact that the agreement is the consensual undertaking of the parties and the parol evidence rule applies. *Hortman v. Childress,* 162 Ga.App. 536, 292 S.E.2d 200 (1982); *Brown v. Farkas,* 195 Ga. 653, 25 S.E.2d 411 (1943). In dischargeability disputes under § 523(a)(5), where the obligations at issue are contained in a voluntarily executed settlement agreement between spouses, a determination that those obligations are actually in the nature of alimony, maintenance or support requires a determination that (1) the parties had a mutual intent to have the obligations considered as such support at the time the agreement was made with that intent, absent a showing of ambiguity, mutual mistake, or fraud, determined from the plain language of the agreement, and (2) the obligation at issue can legitimately be characterized as being in the nature of support. There is no construction required or even permissible when the language employed by the parties is plain, unambiguous and capable of only one reasonable interpretation. *Merrill Lynch, Pierce, Fenner and Smith v. Stidham,* 506 F.Supp. 1182 (M.D.Ga.1981), *aff'd in part,* 658 F.2d 1098 (5th Cir.1981).

▌ In the present action, the language of the settlement agreement is plain, clear and unambiguous. This court has had the opportunity to observe both Dr. and Ms. Clark during testimony. Both parties appeared intelligent, educated, and not to be operating under any mental or physical disability. Both were quite articulate in the presentation of their testimony. At the time the settlement agreement was executed, both were represented by counsel, and while in divorce proceedings, a bankruptcy filing by one or both spouses is a distinct possibility, in the present case, it was a reality at the time the settlement agreement was executed. Dr. Clark was a debtor in a Chapter 11 proceeding. Dr. Clark testified that he read and understood the settlement agreement before he signed it. Ms. Clark testified that although she did not read the agreement before she signed, she has read the agreement, does understand it and that the agreement reflects the understanding of the parties at the time it was entered.

## ORDER AND JUDGMENT

From the evidence presented, Ms. Clark has established by clear and convincing evidence that at the time the settlement agreement at issue was executed by the parties, it was their mutual intent that the following obligations be in the nature of maintenance or support as contemplated under 11 U.S.C. § 523(a)(5). The following obligations legitimately can be construed as such maintenance or support, and therefore, are excepted from Dr. Clark's discharge:

1. The obligation of Dr. Clark to make periodic payments to Ms. Clark in the sum of $500.00 per month per child as set forth in § 3 *Child Support* at page 7 of the settlement agreement,

2. The obligation of Dr. Clark to pay one-half the cost of camp for each of the minor children, up to a maximum of $350.00 per child per year as set forth § 3(d) *Child Support* at page 9 of the settlement agreement;

3. The obligation of Dr. Clark to pay $50.00 per week for day care from the time the wife obtains employment and up until the minor child, Ivy, is enrolled in public school as set forth in § 3(e) *Child Support* at page 9 of the settlement agreement;

4. The obligation of Dr. Clark to pay 50% of the costs incurred by the minor children in participating in extracurricular activities, not to exceed $350.00 per year per child as set forth in § 3(f) *Child Support*, at page 9 of the settlement agreement;

5. The obligation of Dr. Clark to pay for and maintain a major medical and hospitalization insurance policy as set forth in § 4 *Health and Hospitalization Insurance* at page 9 of the settlement agreement;

6. The obligation of Dr. Clark to provide a term life insurance policy in the principal amount of $200,000.00 as set forth in § 5 *Life Insurance* page 10–11 of the settlement agreement;

7. The obligation of Dr. Clark to pay tuition, books and matriculation fees for each one of the minor children to attend a four-year college as set forth in § 6 *College Education* at page 11 of the settlement agreement.

8. The obligation of Dr. Clark to pay to Ms. Clark the sum of $50,000.00 at the rate of $10,000.00 per year for five years as set forth in § 7 *Disposition of Family Home* at page 14 of the settlement agreement.

9. The obligation of Dr. Clark to pay medical and dental expenses in the amount of $6,525.00 under § 8 *Payment of Medical Expenses* at pages 15–16.

 Regarding the issue of whether Dr. Clark's obligation to pay the debt due Fidelity National as an agreement to indemnify and hold Ms. Clark harmless from any loss she may incur as a result of the Fidelity National claim, Ms. Clark has failed to meet the burden required for the establishment of nondischargeability of this aspect of the settlement agreement. Unlike the other provisions of the settlement agreement which are in dispute, this aspect of the agreement did not specifically provide that this obligation of Dr. Clark was in the nature of maintenance or support. As to this provision, Ms. Clark relies upon the legislative history of § 523(a)(5) which establishes that debts resulting from an agreement by a debtor to hold the debtor's spouse harmless on joint debts are nondischargeable to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse. *See* Hearings, pt 3, at 1287–1290 (HR Rep. No. 95–595, 95th Cong., 1st Sess. 364 (1977)), (S.Rep. No. 95–989, 95th Cong., 2nd Sess. 79 (1978), U.S.Code Cong. & Admin.News p. 5787). This determination is made under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement.

While the legislative history of § 523(a)(5) is helpful, the plain language of the agreement is controlling. Section 12 *Alimony* at page 19 of the settlement agreement provides: "There is no alimony being paid by either party, and both parties specifically are relinquishing and forever releasing any claim to alimony in the future." This is a clear expression of the

present intent of the parties at the time the settlement agreement was entered that Ms. Clark would receive no direct alimony, maintenance or support from Dr. Clark. All aspects of the settlement agreement dealing with maintenance or support obligations from Dr. Clark were for the benefit of the minor children. This court is cognizant of the realities of the situation that by determining the obligation dischargeable, the creditors of both Dr. Clark and Ms. Clark will pursue Ms. Clark for collection, and if successful, this will result in a diminution in her property which may impact upon her ability to provide maintenance and support for the minor children. However, what is at issue is Dr. Clark's agreed to obligation to provide maintenance and support for his minor children, not Ms. Clark's ability to provide such support.

Judgment is entered accordingly in favor of Mary Carole Bray Clark on her counterclaim and against Dr. Alan Dale Clark on his complaint in the amount of Twenty–Six Thousand Five Hundred Twenty–Five and No/100 ($26,525.00) Dollars plus future interest at such rate as established by law. Entry of judgment in this matter in no way precludes Mary Carole Bray Clark from collecting in addition to the sum set forth in this judgment any sum which may become due subsequent to the entry of this judgment in accordance with the terms of the settlement agreement incorporated by reference into the final judgment and decree of total divorce between Dr. Clark and Ms. Clark, parties in this proceeding, and determined as nondischargeable under 11 U.S.C. § 523(a)(5) in this judgment.